Natalie SIMS, a minor, By and Through her parents and next friends Charles and Sheila SIMS, Plaintiff,

v.

Lamar GLOVER, et al., Defendants.

No. Civ.A. 98–D–623–S.

United States District Court,
M.D. Alabama,
Southern Division.

Dec. 9, 1999.

1274

John L. McClung, Lindsey & McClung, Elba, AL, for plaintiff.

Kendrick E. Webb, Webb & Eley, P.C., Montgomery, AL, Gary C. Sherrer, Farmer, Farmer, Malone & Sherrer, P.A., Dothan, AL, Bart G. Harmon, Webb & Eley, P.C., Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendants' Motion To Dismiss Amended Complaint ("Mot."), together with a supporting Memorandum Brief ("Mem."), both filed November 12, 1998. Plaintiff Natalie Sims ("Sims") filed a Response To Defendants' Motion To Dismiss ("Resp.") on December 2, 1998. Defendants filed a Reply on December 9, 1998. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendants' Motion is due to be denied in part and granted in part.

## JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 1983 (The Civil Rights Act of 1871, as amended). The Parties do not contest personal jurisdiction or venue.

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure,* a defendant may move to dismiss a complaint because the plaintiff has failed to state a claim upon which relief may be granted. *See* FED. R.CIV.P. 12(b)(6). A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert,* 499 U.S. 315, 327, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo,* 489 U.S. 593, 598, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989).

■ Generally, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *In re Johannessen,* 76 F.3d 347, 349 (11th Cir.1996) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Braden v. Piggly Wiggly,* 4 F.Supp.2d 1357, 1360 (M.D.Ala.1998). However, in § 1983 actions where government officials sued in their individual capacities have raised the defense of qualified immunity, the Eleventh Circuit has "tightened" the pleading requirements. *GJR Investments, Inc. v. County of Escambia, Fla.,* 132 F.3d 1359, 1367 (11th Cir.1998). In *Oladeinde v. City of Birmingham,* 963 F.2d 1481 (11th Cir. 1992), the Eleventh Circuit held that in cases where qualified immunity is implicated, "some factual detail is necessary, especially if [the court is] to be able to see that the allegedly violated right was clearly established when the allegedly wrongful acts occurred." *Id.* at 1485. Accordingly, in determining whether Sims has stated a claim, the court must be "guided both by the regular 12(b)(6) standard and by the heightened pleading requirement." *GJR Investments,* 132 F.3d at 1367.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Charles Sims and Sheila Sims filed this civil rights action on May 29, 1998 as parents and next friend of Plaintiff Natalie Sims ("Sims"), a minor. In her original Complaint, Sims named as Defendants Sheriff Lamar Glover ("Sheriff Glover"), Deputy Sheriff Jackie Smith ("Deputy Smith"), Deputy Sheriff Ashley Forehand ("Deputy Forehand"), Houston County and the Houston County Commission. (Compl.¶¶ 6–14.)

Sims' Complaint alleged constitutional violations under 42 U.S.C. §§ 1983 and 1985 (Count 1), a conspiracy to deny Sims' civil rights under 42 U.S.C. § 1985 (Count 2), and state law claims of negligence or wantonness, assault, and intentional infliction of emotional distress (Counts 3–5). (*Id.* at 2–8.) Sims' § 1983 claims were predicated on alleged violations of the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. (*Id.* ¶ 22.)

Defendants filed separate motions seeking dismissal of the Complaint. On October 13, 1998, the court entered a Memorandum Opinion And Order ("Mem.Op.") dismissing all claims against Houston County and the Houston County Commission, as well as all claims against Sheriff Glover, Deputy Smith and Deputy Forehand in their official capacities. (Mem.Op. at 1, 17.) The court further dismissed Sims' cause of action under 42 U.S.C. § 1985 and her state law claims. (*Id.* at 17–18.)

As to Sims' § 1983 claims, Sheriff Glover, Deputy Smith and Deputy Forehand (collectively "Defendants") argued that the allegations in the Complaint did not meet the heightened pleading requirement applicable in this circuit. (*Id.* at 5.) Rather than dismiss Sims' § 1983 claims, however, the court ordered Sims to amend her Complaint to state with "some factual detail" her causes of action, as required under *Oladeinde,* 963 F.2d at 1485. (*Id.* at 6, 10.) The court specifically directed Sims (1) to allege with specificity the underlying constitutional rights violated and the facts supporting the violations (*id.* at 11), (2) "conclusion that ... [Sheriff] Glover and [Deputy] Forehand violated [Sims'] constitutional rights" (*id.* at 12), and (3) "to allege detailed facts as to why the defense of qualified immunity cannot be sustained in this action." (*Id.* at 13.) The court "forewarned that if only conclusory allegations [were] provided, the court [would] grant [ ] Defendants' 12(b)(6) Motion To Dismiss." (*Id.* at 13–14.)

Sims filed an Amended Complaint on October 26, 1998. As alleged therein, Sims was a minor and was present in a trailer on May 31, 1996 when deputies Smith and Forehand searched the premises pursuant to a search warrant. (Am. Compl. ¶ 8.) According to Sims, the warrant may have been based on "information supplied by an inmate at the Houston County Jail that there were drugs hidden on the premises." (*Id.*)

The Amended Complaint does not allege that Sheriff Glover was present at the search. Rather, it alleges that deputies Smith and Forehand were acting "under the supervision" of Sheriff Glover and that Deputy Forehand was the supervisor at the scene. (*Id.*)

During the search, law enforcement officers conducted a pat-down search of all the occupants at the trailer, including Sims. (*Id.*) No incriminating evidence was found on Sims or on any other occupant. (*Id.*) Nonetheless, after searching the premises, Deputy Smith strip searched Sims. (*Id.* ¶¶ 9, 15B.) Deputy Forehand witnessed the strip search of Sims. (*Id.* ¶ 9.) As alleged, the strip search was conducted without a warrant; Sims was never arrested; and at no time subsequent to the strip search did a warrant issue for Sims' arrest. (*Id.* ¶¶ 9, 11.) Moreover, no female officer was present during Sims' strip search, and deputies Smith and Forehand knew that Sims was a minor. (*Id.* ¶¶ 9–10.)

Based on Defendants' conduct, Sims seeks redress for alleged deprivations of rights secured by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, as enforced by the 42 U.S.C. § 1983.[1] (*Id.* ¶ 14.) Sims requests compensatory and punitive damages "as the jury may assess, but in excess of $100,000, together with interest and costs," and an award of attorney's fees. (*Id.* at 2.)

## DISCUSSION

The only claims remaining in this lawsuit are Sims' constitutional claims brought

---

1. In her Amended Complaint, Sims also references 42 U.S.C. § 1985. (Am.Compl. ¶ 14.) At Sims' request, the court dismissed Sims' action under § 1985 in its prior Memorandum Opinion And Order. (Mem.Op. at 4.) To the extent that Sims now seeks to reassert her § 1985 claim, the court finds that Sims has failed to state a claim. In her Amended Complaint, Sims has not asserted a single fact in support of a § 1985 claim. Specifically, she has not alleged a conspiracy or that Defendants' "action stemmed from ... class-based animus." *GJR Investments,* 132 F.3d at 1370 n. 11. Thus, the court finds that Sims has not pleaded the elements necessary to establish a § 1985 conspiracy claim. Alternatively, the court finds that Sims has abandoned any § 1985 claim. In her Response To Defendants' Motion To Dismiss, Sims makes no mention of § 1985, arguing only that "[t]he claims against Defendants ... are brought under 42 U.S.C. § 1983." (Resp. at 1.) *See, e.g., Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995) (in the context of summary judgment, stating that claims pleaded but not relied upon "are deemed abandoned"). Accordingly, Sims' § 1985 claim, if one is asserted, is due to be dismissed.

under § 1983 against Sheriff Glover, Deputy Smith and Deputy Forehand in their individual capacities. Defendants generally contend that, despite the court's Memorandum Opinion And Order directing Sims to amend her Complaint and plead her claims with specificity, Sims has failed to do so. Defendants' argument is two-fold. First, Defendants assert that, under Rule 12(b)(6) of the *Federal Rules of Civil Procedure,* Sims' Amended Complaint fails to allege facts supporting claims for alleged deprivations of constitutional rights under § 1983. Second, Defendants contend that, because Sims has not alleged deprivations of clearly established constitutional rights, they are immune from suit under the well-established doctrine of qualified immunity. (Mem. at 3.)

### I. § 1983 Standard

■ Under § 1983, Sims must allege two elements to state a claim and also must overcome Defendants' affirmative defense of qualified immunity. As noted by the Eleventh Circuit in *GJR Investments,* "[a]t this stage in the proceedings, the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined." 132 F.3d at 1366; *Wooten v. Campbell,* 49 F.3d 696, 699 (11th Cir.1995). That is, Defendants can "defeat" Sims' § 1983 claims if the Amended Complaint fails " 'to state a claim upon which relief can be granted.' " [2] *Id.* (citing FED.R.CIV.P. 12(b)(6)). Similarly, "[u]nder the qualified immunity defense, the defendants are immune from liability if [Sims' Amended Complaint] fails to state a violation of a 'clearly established . . . constitutional right[ ] of which a reasonable person would have known.' " *Wooten,* 49 F.3d at 699 (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

Under the qualified immunity analysis, the Supreme Court has stated that "[a] necessary concomitant to the determination of whether the constitutional right or federal statutory right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *see also Wooten,* 49 F.3d at 699.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727; *see also Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir.1988). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

■ The test for whether a governmental defendant is entitled to qualified immunity from liability in his or her individual capacity involves a two-step analysis. A government official first must demonstrate that " 'he [or she] was acting within the scope of his [or her] discretionary authority when the allegedly wrongful acts occurred.' " *Rich,* 841 F.2d at 1563–64 (quoting *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983)). If a defendant satisfies this burden, the plaintiff must show either that the official's actions " 'violated clearly established constitutional law' " or a federal statute. *Id.*

---

2. To state a claim for relief, § 1983 plaintiffs must allege two elements with some factual detail: "(1) that they suffered a deprivation of 'rights, privileges or immunities secured by the Constitution and laws' of the United States," and (2) that a person " 'acting under color of law' caused the deprivation, either by an act or omission." *Wideman v. Shallowford Community Hosp., Inc.,* 826 F.2d 1030, 1032

(11th Cir.1987) (citation omitted). In the court's prior Memorandum Opinion And Order in this case, the court found that Sims satisfactorily pleaded that Defendants acted under color of state law. (Mem.Op. at 11.) Likewise, in her Amended Complaint, the court finds that Sims has sufficiently alleged this element. (Am.Compl.¶¶ 8, 9, 16.)

Under the second prong, the court must determine whether the applicable law was clearly established at the time of the challenged action. This is determined by reference to decisions of the Supreme Court of the United States, the Court of Appeals for the Eleventh Circuit and, in this case, the Supreme Court of Alabama. *D'Aguanno v. Gallagher,* 50 F.3d 877, 881 n. 6 (11th Cir.1995); *Courson v. McMillian,* 939 F.2d 1479, 1498 n. 32 (11th Cir. 1991). The relevant inquiry is "fact specific," *Rodgers v. Horsley,* 39 F.3d 308, 311 (11th Cir.1994), and a plaintiff must point to a controlling case, decided before the events at issue, that establishes a constitutional violation on "materially similar" facts. *Lassiter v. Alabama A & M Univ., Bd. of Trustees,* 28 F.3d 1146, 1150 (11th Cir.1994). As emphasized in *Lassiter,* "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violated federal law in the circumstances." *Id.;* see also *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (holding that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right"). Absent a controlling and factually on-point case, a defendant can overcome qualified immunity only when "the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw" *Smith v. Mattox,* 127 F.3d 1416, 1419 (11th Cir. 1997) (citing *United States v. Lanier,* 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)).

Based on the foregoing principles, the court will first decide whether in her Amended Complaint Sims has asserted cognizable claims under the United States Constitution as enforced by § 1983. *Id.* If Sims states a viable claim against any Defendant, the court will then address the qualified immunity defense. The court now turns to Sims' Amended Complaint and whether the claims asserted therein can survive Defendants' Motion To Dismiss.

## II. Fourth Amendment Right To Be Free From Unreasonable Search And Seizure

Sims contends that Defendants violated her Fourth Amendment right to be free from unreasonable searches and seizures. Specifically, Sims alleges that the conduct of Defendants violated "the following clearly established and well-settled rights":

A. Freedom from unreasonable search in that the strip search of [Sims] was unreasonable and was not conducted in the least intrusive manner. [Deputies] Smith and Forehand knew or should have known that by failing to find anything suspicious during the pat down of [Sims] made a further search of [Sims] unreasonable. [Sheriff] Glover failed to protect this right by failing to provide adequate supervision and training.

B. Freedom from unreasonable seizure in that the person of the [Sims] was detained and held during the strip search. [Deputies] Smith and Forehand knew or should have known that by failing to find anything suspicious during the pat down of [Sims] or of the search of the premises made a further search or detention of [Sims] unreasonable. [Sheriff] Glover failed to protect this right by failing to provide adequate supervision and training.

(Am.Compl.¶¶ 14, 15A, 15B.)

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. 4; *see also United States v. McBean,* 861 F.2d 1570, 1573 (11th Cir. 1988) ("The Fourth Amendment to the Constitution prohibits, on its face, unreasonable searches and seizures[.]"). The Fourth Amendment is applicable to the states through the Fourteenth Amend-

ment. *Michigan v. Summers*, 452 U.S. 692, 694 n. 2, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981).

Under § 1983, the standard for determining liability is different for deputies Smith and Forehand, who were participants in the alleged unconstitutional conduct, as compared to Sheriff Glover, whom Sims seeks to hold accountable under a supervisory liability theory. Thus, the court will address Sims' Fourth Amendment unreasonable search and seizure claims against deputies Smith and Forehand separate from Sims' claims against Sheriff Glover.

### A. Deputies Smith & Forehand

#### 1. *Unreasonable Search*

For purposes of their Motion To Dismiss, deputies Smith and Forehand "concede" that Sims "states a viable Fourth Amendment unreasonable search claim against [them] in their individual capacities." (Mem. at 4.) The court agrees based upon *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), which is discussed more fully below in Section II. A.3. Accordingly, the court finds that Sims has stated a Fourth Amendment unreasonable search claim against deputies Smith and Forehand and has satisfied the heightened pleading requirement.

#### 2. *Unreasonable Seizure*

■ Sims alleges that not only was the search of her person unreasonable but also that her detention during the strip search constituted an unreasonable seizure because she was detained without any justification. (Am.Compl.¶ 15B.) The Fourth Amendment requires "that searches and seizures be founded upon an objective justification," and this requirement "governs all seizures of the person, 'including seizures that involve only a brief detention short of traditional arrest.'" *United States v. Mendenhall*, 446 U.S. 544, 551, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Moreover, for Fourth Amendment pur-

poses, "[a] person is seized ... only when, by means of physical force or *a show of authority*, his [or her] freedom of movement is restrained.... Only when freedom of movement is restrained by authority— only when a seizure occurs—does the Fourth Amendment and the probable cause requirement apply." *Craig v. Singletary*, 127 F.3d 1030, 1041 (11th Cir. 1997) (emphasis added). In other words, a person is "seized" when "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he [or she] was not free to leave." *Mendenhall*, 446 U.S. at 554, 100 S.Ct. 1870 (citations omitted).

Deputies Smith and Forehand assert that Sims cannot state a claim under the Fourth Amendment for an unreasonable seizure because Sims' detention was reasonable as a matter of law. More specifically, deputies Smith and Forehand contend that Sims' "detention represents only an incremental intrusion on personal liberty because the search of the premises where she was located had been authorized by a valid warrant." (Mem. at 4–5, citing *Michigan*, 452 U.S. at 692–700, 101 S.Ct. 2587.) While deputies Forehand and Smith correctly cite *Michigan* for the proposition that government officials lawfully conducting a search may detain the occupants of the premises during the search, *Michigan* is inapplicable in this case. Based on the allegations in the Amended Complaint, which must be taken as true, Sims was detained and strip searched *after*, not during the execution of the search warrant at the premises.[3] Accordingly, the court rejects deputies Smith and Forehand's argument based on *Michigan*.

■ In applying the legal principles applicable to Fourth Amendment seizures, as discussed above, it is obvious and the court so finds that Sims was not free to leave as she was being strip searched by Deputy

---

**3.** In her Amended Complaint, Sims states that deputies Forehand and Smith's "fail[ure] to find anything suspicious during ... the search of the premises" rendered *"a further search"* of Sims "unreasonable." (Am. Compl. ¶ 15B, emphasis added.)

Smith in the presence of Deputy Forehand.[4] Thus, the court finds that Sims was seized. Moreover, because as alleged deputies Smith and Forehand did not have a warrant authorizing a strip search of Sims or any other legal basis upon which to justify the strip search, the court finds that the detention was unreasonable. Therefore, the court finds that Sims has stated a claim for an unreasonable seizure in violation of the Fourth Amendment. Accordingly, the court finds that deputies Smith and Forehand's Motion To Dismiss is due to be denied with regard to Sims' Fourth Amendment unreasonable seizure claim.

### 3. Qualified Immunity

■ The court now turns to the two-step inquiry for determining whether deputies Smith and Forehand are entitled to qualified immunity. *See Rich*, 841 F.2d at 1563–64. First, the court finds that deputies Smith and Forehand were "acting within the scope of [their] discretionary authority" when the alleged unconstitutional strip search occurred. *Zeigler*, 716 F.2d at 849. Neither Sims nor deputies Smith or Forehand have devoted any discussion to this prong. As explained in *O'Ferrell v. United States*, 998 F.Supp. 1364 (M.D.Ala.1998) (Albritton, J.), the lack of discussion on this point

> is not surprising; rather, it is quite often the case. *See, e.g., Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1149 (11th Cir.1994) (skipping over issue of discretionary function to discuss clearly established law); *see also Lancaster*, 116 F.3d at 1424 (noting that parties did not dispute whether act was discretionary function). The determination that an officer was acting within his discretionary au-

thority is quite a low hurdle to clear. As noted by Judge Thompson in *Sweatt v. Bailey*, 876 F.Supp. 1571, 1576 (M.D.Ala.1995), the burden is made so easy "because of the level of generality at which this requirement must be determined." An official may show that an act was within his discretionary authority merely by showing that the acts "(1) 'were undertaken pursuant to the performance of his duties,' and (2) were 'within the scope of his authority.'" *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir.1994).

*Id.* at 1369. This prong warrants little discussion here because there can be no question that the execution of search warrants and the search of individuals are discretionary functions of a deputy sheriff; thus, when the alleged constitutional violation occurred, the court finds that deputies Smith and Forehand's actions were taken pursuant to the performance of their duties and within the scope of their authority. *See Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir.1995) ("[T]here is no doubt" that "the officers were acting within their discretionary authority" in obtaining a search warrant but executing it at the wrong residence.) Accordingly, the court finds that the first prong is established.

Second, the court finds that Sims has alleged a clearly established violation of the Fourth Amendment's requirement that all searches and seizures must be reasonable.[5] In *Ybarra*, law enforcement officers obtained a search warrant authorizing the search of a tavern and the person of the bartender for evidence of controlled substance violations. 444 U.S. at 87–88, 100 S.Ct. 338. During the search, one officer

---

4. The court notes that law enforcement officers, such as Deputy Forehand, who are present at the scene and observe another officer violate an individual's constitutional rights may be held liable under § 1983 for "nonfeasance." *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441 (11th Cir.1985).

5. "In determining whether a complaint alleges a violation of a clearly established right,

[the court] must accept the allegations contained in the plaintiff's complaint as true." *James v. City of Douglas*, 941 F.2d 1539, 1540 n. 1 (11th Cir.1991). On a Rule 12(b)(6) motion to dismiss, as here, deputies Smith and Forehand are entitled to qualified immunity if the Amended Complaint fails to allege a violation of a clearly established constitutional right. *See Williams v. Alabama State Univ.*, 102 F.3d 1179, 1182 (11th Cir.1997).

conducted a patdown search of a majority of the customers in the tavern. Ventura E. Ybarra ("Ybarra"), the appellant, was one of those customers. *Id.* at 88, 100 S.Ct. 338. In the course of the patdown of Ybarra, the officer seized heroin from his pants pocket. *Id.* at 89, 100 S.Ct. 338. Subsequently, Ybarra was indicted and convicted for unlawful possession of a controlled substance. *Id.*

The Supreme Court reversed the judgment of conviction on Fourth Amendment grounds and stated its holding, which applies equally to this case:

> It is true that the police possessed a warrant based on probable cause to search the tavern in which Ybarra happened to be at the time the warrant was executed. But, a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be. The Fourth and Fourteenth Amendments protect the "legitimate expectations of privacy" of persons, not places.

*Id.* at 91, 100 S.Ct. 338 (internal footnote and citation omitted).

The court finds that *Ybarra*, decided years prior to the alleged violative conduct in this case, clearly establishes the law with respect to the strip search of Sims. However, in formulating the fact-specific inquiry for determining a law enforcement officer's entitlement to qualified immunity from a Fourth Amendment claim, the standard is not "actual probable cause but only 'arguable probable cause.'" *Montoute v. Carr,* 114 F.3d 181, 184 (11th Cir.1997) ("In order to be immune from a Fourth Amendment claim, an officer need not have actual probable cause but only 'argu-able probable cause,' i.e., the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed."). *See also Jones v. Cannon,* 174 F.3d 1271, 1283 n. 3 (11th Cir.1999). Thus, the court must examine "'whether reasonable officers in the same circumstances and possessing the same knowledge as [deputies Smith and Forehand] could have believed that probable cause existed'" for the strip search and concomitant detention. *Swint v. City of Wadley,* 51 F.3d 988, 995 (11th Cir.1995) (quoting *Von Stein v. Brescher,* 904 F.2d 572, 579 (11th Cir.1990)); *see also Anderson,* 483 U.S. at 641, 107 S.Ct. 3034 (recognizing that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and ... that in such cases those officials ... should not be held personally liable").

Applying these principles, the fact-specific question is whether on May 31, 1996, based on all the information known by deputies Smith and Forehand, they could have believed that, after executing a narcotics search warrant for a residence where Sims was present probable cause existed to strip search Sims without a warrant and after a patdown of Sims had revealed no incriminating evidence. In viewing the allegations in the Amended Complaint as true, the court finds that there are no facts upon which deputies Smith and Forehand could have possessed even arguable probable cause for the strip search. Presumptively, deputies Smith and Forehand were lawfully at the trailer executing a search warrant. However, there are no facts alleged that would have given them probable cause to search the person of Sims. Sims was merely present at the premises. Deputies Smith and Forehand did not have a warrant for the search of Sims' person, and probable cause for the strip search never arose at any time during the execution of the search. Thus, the court finds that, if Sims' allegations are true, deputies Smith and Forehand violated clearly established constitu-

tional law in strip searching Sims. Sims has, therefore, satisfied the second prong of the two-step qualified immunity analysis. Based on the foregoing, the court finds that deputies Smith and Forehand's Motion To Dismiss seeking qualified immunity on Sims' Fourth Amendment unreasonable search and seizure claim brought under § 1983 is due to be denied.[6]

However, in recognizing that "[o]ne of the purposes of ... qualified immunity ... is to protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government,'" the court will permit limited discovery, if desired, "tailored specifically to the question of ... qualified immunity" and whether any genuine issues of material fact exist surrounding the reasonableness of deputies Smith and Forehand's conduct. *Anderson,* 483 U.S. at 646–647, n. 6, 107 S.Ct. 3034 (quoting *Harlow,* 457 U.S. at 817, 102 S.Ct. 2727). *See Wicks v. Mississippi State Employment Serv.,* 41 F.3d 991, 994 & n. 10 (5th Cir.1995) (stating that discovery on the issue of qualified immunity "must not proceed until the district court first finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity"). Deputies Smith and Forehand are directed to file a fully briefed motion for summary judgment on the issue of qualified immunity on or before December 17, 1999, if they believe that evidence exists outside the facts alleged in the Amended Complaint which would entitle them to qualified immunity. Sims shall have seven days from the date of deputies Smith and Forehand's filing to file a fully briefed response.

### B. Sheriff Glover

Sims also alleges that Sheriff Glover violated her Fourth Amendment right to be free from unreasonable searches and seizures. (Am.Compl.¶¶ 14, 15A, 15B.) Specifically, she alleges that Sheriff Glover was "responsible" for training deputies Smith and Forehand and establishing the "policies" followed by his subordinates. (Am.Compl.¶ 5.) Sims asserts that Sheriff Glover is liable for the alleged unconstitutional strip search by "failing to provide adequate supervision and training." (Am. Compl. ¶¶ 15A & 15B.) Sims sets forth a laundry list of topics on which Sheriff Glover allegedly failed to train, including failure to train officers properly on the execution of search warrants and strip searches. (Am.Compl.¶ 17A–O.) Sheriff Glover asserts that Sims' unreasonable search and seizure claims against him must fail because Sims has failed to plead her facts with specificity. The court agrees.

As the court noted in its prior Memorandum Opinion And Order, supervisory officials cannot be held liable on the theory of respondeat superior. (Mem.Op. at 12.) However, a supervisory official can be held liable under § 1983 for an injury resulting from his or her failure to train subordinates. *Belcher v. City of Foley, Ala.,* 30 F.3d 1390, 1400 (11th Cir.1994). To be held liable for such injury, the supervisory official's failure to train must rise to a level of "'deliberate indifference to the rights of persons with whom the subordinates come into contact'" and said failure to train must "'actually cause[ ] the injury to which the plaintiff complains.'" *Id.* (quoting *Popham v. City of Talladega,* 908 F.2d 1561, 1564–65 (11th Cir.1990)); *Greason v. Kemp,* 891 F.2d 829, 836 (11th Cir.1990).

As forewarned by the court, the court finds that Sims' Fourth Amendment claim against Sheriff Glover is due to be dismissed for failure to meet the heightened pleading requirement. *See GJR Investments,* 132 F.3d at 1368. Specifically, the court finds that Sims has not pleaded in specific factual terms the requisite causal link between the alleged failure to train and the constitutional deprivation. Sims merely alleges that Sheriff Glover knew of

---

**6.** The court also finds that Sims has stated her Fourth Amendment unreasonable search and seizure claims with "some factual detail,"

as required under *Oladeinde,* 963 F.2d at 1485.

the "temperament or propensity" of deputies Smith and Forehand to engage in the alleged unconstitutional conduct. (Am. Compl.¶ 17.) Sims does not specify any characteristics which comprise the "temperament or propensity" of deputies Smith and Forehand to engage in the alleged unconstitutional conduct. Nor does Sims detail specific facts regarding how Sheriff Glover had notice of the alleged "temperament or propensity." For instance, a supervisor would be placed on notice of an officer's propensity to engage in unconstitutional conduct if there existed "[a] history of widespread abuse" that is "obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." *Braddy v. Florida Dep't of Labor and Employment Security*, 133 F.3d 797, 802 (11th Cir.1998); *see also Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.1990). Sims has alleged only the facts of this case. Sims has not asserted that deputies Smith and Forehand have engaged in the alleged unconstitutional behavior in the past. The court finds that this one incident, without more, simply is insufficient to demonstrate the required causal link. Furthermore, the court finds that Sims cannot satisfy the heightened pleading requirement with a conclusory assertion of an alleged "temperament or propensity" on the part of deputies Smith and Forehand. Based on the foregoing, the court finds that Sims has failed to plead with specificity her Fourth Amendment unreasonable search and seizure claims brought under § 1983 against Sheriff Glover in his individual capacity. Accordingly, these claims are due to be dismissed.

### III. The Fourteenth Amendment's Right To Equal Protection Of The Law

Sims contends that Defendants violated her right to equal protection of the law. (Am.Compl.¶ 15C.) Namely, she states that deputies Smith and Forehand "questioned the occupants as to whether [they] were related to any members of the Houston County Sheriff[']s Department" and only strip searched those, including Sims, who answered in the negative. (*Id.* ¶ 8.) Sims

argues "that singling out the occupants of the premises not related to members of the Sheriff[']s Department denied [her] equal protection under the law." (*Id.*) Sims further asserts that Sheriff Glover is liable because he "failed to protect this right by failing to provide adequate supervision and training." (*Id.* ¶ 15C.) Defendants argue that Sims has failed to state a claim because "[t]here is no constitutionally protected interest to be treated the same or no different from people related to members of the Sheriff's Department." (Mem. at 8.)

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the law." U.S. Const. amend. 14. "The Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.'" *Spence v. Zimmerman*, 873 F.2d 256, 258 (11th Cir.1989). While Sims has alleged that she was treated differently than those individuals who were related to an employee of the Houston County Sheriff's Department, government officials' different treatment of two groups does not automatically constitute a violation of the Equal Protection Clause. *Damiano v. Florida Parole and Probation Comm'n*, 785 F.2d 929, 932–33 (11th Cir. 1986). That is, to state an equal protection claim, Sims must allege that she is similarly situated with individuals who were treated differently than she *and* that the differential treatment was discriminatorily based on Sims' membership in a constitutionally-protected class, such as "race, religion [or] national origin...." *Id.*; *see also City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). The different treatment must further be the result of intentional discrimination. *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) ("Proof of ... discriminatory intent or purpose is required to

show a violation of the Equal Protection Clause.")

■ The court finds that Sims' equal protection claim must fail because she has not alleged a denial of equal protection based upon her membership in any constitutionally-protected class. Sims has not pointed to any cases and the court has found none establishing that individuals who are not related by either blood or marriage to a law enforcement officer comprise a protected class. Accordingly, the court finds that Sims' equal protection claim is due to be dismissed.

### IV. The Eighth Amendment Right To Be Free From Cruel And Unusual Punishment

■ Sims alleges that Defendants infringed upon her right to be "free[ ] from cruel and unusual punishment in that the strip search ... punished [her]." (Am. Compl.¶ 15E.) As to Sheriff Glover, Sims asserts that he "failed to protect this right by failing to provide adequate supervision and training." (Id.)

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. 8. Defendants argue (Mem. at 5–6), and the court agrees that the Eighth Amendment is wholly inapplicable in this case as "[t]he Eighth Amendment protects only those who have been convicted of a crime." Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir.1989), overruled on other grounds, Turquitt v. Jefferson County, Ala., 137 F.3d 1285, 1291–92 (11th Cir. 1998); see also Whitley v. Albers, 475 U.S. 312, 318, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) ("The Cruel and Unusual Punishments Clause 'was designed to protect those convicted of crimes' and, thus, applies 'only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.'"); see also Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1431 n. 6 (11th Cir.1997). Because Sims was never convicted of a crime, she fails to state a

claim for cruel and unusual punishment under the Eighth Amendment to the United States Constitution. Accordingly, the court finds that this claim is due to be dismissed.

### V. The Right To Due Process Of Law

Sims alleges that she has been denied her right to due process. (Am. Compl.¶ 15C). Specifically, she claims that she has been deprived of her

[f]reedom from the abuse of due process of law in that [ ] Defendants had no probable cause to strip search [her] and made no effort to obtain a warrant for her arrest or for a strip search and had no reason for not obtaining said warrant.... [Sheriff] Glover failed to protect this right by failing to provide adequate supervision and training.

(Id.) In moving the court to dismiss this claim, Defendants assert the following three arguments: (1) Sims has failed to plead her due process claim with specificity; (2) the Substantive Due Process Clause of the Fourteenth Amendment does not provide a remedy; and (3) the Fifth Amendment's Due Process Clause is inapplicable because Sims alleges only state action. For the reasons that follow, the court agrees with all three arguments.

■ The Fourteenth Amendment of the United States Constitution protects against deprivation by state action of a constitutionally protected interest in "life, liberty or property" without the due process of law. Zinermon v. Burch, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The Due Process Clause provides two types of constitutional protection: procedural due process and substantive due process. McKinney v. Pate, 20 F.3d 1550, 1555 (11th Cir.1994). To demonstrate a procedural due process violation, a plaintiff must allege "(1) a constitutionally protected interest in life, liberty or property, (2) governmental deprivation of that interest, and (3) the constitutional inadequacy of procedures accompanying the deprivation." Bank of Jackson County v. Cherry, 980 F.2d 1362, 1366 (11th Cir.1993). Substan-

tive due process, on the other hand, protects "fundamental rights," which are rights contemplated by the Constitution as "implicit in the concept of ordered liberty." *McKinney*, 20 F.3d at 1556.

### A. Heightened Pleading

██ As "stress[ed]" by the Eleventh Circuit in *GJR Investments*, "[h]eightened pleading is the law of this circuit" when § 1983 claims are asserted against government officials in their individual capacities. 132 F.3d at 1368. It is unclear whether Sims is attempting to state a substantive due process or a procedural due process claim. It is even more unclear how Sims' assertion that she was searched without probable cause relates to either type of due process claim. Sims does not even point out what life, liberty or property interest she believes was implicated by the strip search. It is not the court's duty and it would be improper for the court to attempt to read between the lines, infer the facts, and create, draft and frame a constitutional due process issue for Sims, if one even exists. Sims' conclusory allegation of a deprivation of due process, without more, is wholly insufficient to meet the heightened pleading standard. This is precisely the type of vague claim that should be "summarily" dismissed under the heightened pleading standard. *GJR Investments*, 132 F.3d at 1368. Accordingly, the court finds that Sims' due process claim is due to be dismissed for her failure to plead the claim with specificity.

### B. Substantive Due Process

██ Alternatively, the court finds that, to the extent Sims is attempting to state a claim under the Substantive Due Process Clause of the Fourteenth Amendment, this Clause does not provide her with a remedy. In *Albright v. Oliver*, 510 U.S. 266, 273–74, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), cited by Defendants (Mem. at 6), the Supreme Court held that the petitioner's claim of a right to be "free from criminal prosecution except upon probable cause" failed to state a Fourteenth Amendment substantive due process claim. In

reaching its holding, the Supreme Court explained:

> Where a particular amendment "provides an explicit textual source of constitutional protection" against a particular sort of governmental behavior "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."

> We think this principle is likewise applicable here. The Framers considered the matter of pretrial deprivations of liberty, and drafted the Fourth Amendment to address it.

*Id.* at 273, 114 S.Ct. 807 (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)); *see e.g. Uboh v. Reno*, 141 F.3d 1000, 1003 (11th Cir.1998) (characterizing a malicious prosecution claim as being based on the Fourth rather than Fourteenth Amendment); *Tinney v. Shores*, 77 F.3d 378, 380–381 (11th Cir.1996) (holding that the plaintiffs' Fourteenth Amendment substantive due process claim was foreclosed because the Fourth Amendment provided protection for their claim that law enforcement officers participated in an unlawful seizure of their mobile home).

Here, Sims alleges the same facts in support of both her "due process" claim and her Fourth Amendment unreasonable search and seizure claims. (Am. Compl.¶¶ 15A, 15B, 15C.) The deprivation of which Sims complains is specifically protected by the Fourth Amendment. *See Wilson v. Arkansas*, 514 U.S. 927, 931, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995) ("[T]he underlying command of the Fourth Amendment is always that searches and seizures be reasonable."). Sims has not indicated how a substantive due process right would be different from her rights protected under the Fourth Amendment's prohibition against unreasonable searches and seizures. Accordingly, the court finds that any substantive due process claim asserted in ¶ 15C of Sims' Amended Complaint is due to be dismissed as said claim is redundant of the rights guaranteed by

the more specific text of the Fourth Amendment.

### C. The Due Process Clause Of The Fifth Amendment

 To the extent that Sims attempts to state a claim alleging a deprivation of the Due Process Clause of the Fifth Amendment in ¶ 15C of her Amended Complaint, the court agrees with Defendants that her claim must fail. (Mem. at 5.) The Fifth Amendment Due Process Clause cannot provide a basis for liability, because it "applies only to the federal government." *Sweatt v. Bailey*, 876 F.Supp. 1571, 1582 (M.D.Ala.1995); *see also Riley v. Camp*, 130 F.3d 958, 972 n. 19 (11th Cir.1997) (noting that "[t]he Fifth Amendment obviously does not apply . . .—the acts complained of were committed by state rather than federal officials"). Accordingly, any claim which Sims attempts to state under the Due Process Clause of the Fifth Amendment is due to be dismissed.

### VI. The Fourth Amendment's Protection Against The Use Of Excessive Force

Sims alleges that she was deprived of her "[f]reedom from the use of excessive and unreasonable force in [that] [deputies] Smith and Forehand forced [her] to strip in their presence and said use of force was excessive and unreasonable. [Sheriff] Glover failed to protect this right by failing to provide adequate supervision and training." (Am.Compl.¶ 15F.) Because Sims seeks to hold deputies Smith and Forehand liable for their direct participation and Sheriff Glover liable under a supervisory theory, as in Section II above, the court will address Sims' Fourth Amendment excessive force claim against deputies Smith and Forehand separate from Sims' claim against Sheriff Glover.[7]

### A. Deputies Smith and Forehand

 Deputies Smith and Forehand argue that "[t]o the extent [Sims] alleges a claim for excessive or unreasonable force, that claim would be analyzed under the Fourth Amendment[']s prohibition against unreasonable seizures due to the fact that she was not ever arrested and[,] therefore[,] never considered a pre-trial detainee." (Mem. at 5.) The court agrees and will analyze Sims' claim of excessive force under the Fourth Amendment. *See Graham*, 490 U.S. at 395, 109 S.Ct. 1865 (holding that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness standard' "). *Graham* resolved that the Fourth Amendment is the exclusive source of constitutional protection where excessive force is asserted against an officer in the context of an alleged seizure.

 A plaintiff must allege two elements to state a claim for excessive force under the Fourth Amendment: "(1) [that] a seizure occurred; and (2) that excessive force was used to effect the seizure." *Samarco v. Neumann*, 44 F.Supp.2d 1276, 1284–85 (S.D.Fla.1999) (citing *Brower v. County of Inyo*, 489 U.S. 593, 596–97, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989)). First, as previously discussed in Section II.A.2, Sims was "seized" within the meaning of the Fourth Amendment when Deputy Smith, observed by Deputy Forehand, detained her for purposes of conducting a strip search. Thus, the court finds that Sims has satisfied the first element.

 Second, the court must determine if Sims has alleged excessive force. Defendants merely argue that Sims cannot state a claim because she "fails to allege any facts indicating the use of *any force* against [her]." (Mem. at 5.) The court disagrees. The force alleged by Sims was a coercion and a command by a law enforcement officer to submit to a strip search. "Physical contact is . . . not re-

---

**7.** As discussed in footnote 4, *supra,* because Deputy Forehand observed Deputy Smith detain and conduct the strip search of Sims, Deputy Forehand can be held liable just as if he was the one who strip searched Sims. *See Fundiller,* 777 F.2d at 1441.

quired to demonstrate the unreasonableness of the force used to effect a particular seizure." *Martin v. Board of County Commissioners of the County of Pueblo,* 909 F.2d 402, 406–407 (10th Cir.1990) (citing excessive force cases "where the force is expressed by means other than physical contact," such as the "threatened use of mace"); *see also Crosby v. Paulk,* 187 F.3d 1339, 1351 (11th Cir.1999) ("[E]xcessive force claims under the Fourth Amendment refer to unreasonable force *or* physical contact exerted by law enforcement agents in the context of arrests, investigatory stops, and seizures of people.") (emphasis added); *California v. Hodari D.,* 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (recognizing that "[a]n arrest requires either physical force . . . or, where [physical force] is absent, submission to the assertion of authority"). Based on the foregoing, the court finds that Deputy Smith required Sims to be strip searched based on his status as a law enforcement officer and that said action constituted a show of authority sufficient to allege force and to state a claim for excessive force under the Fourth Amendment.

■ Because Sims has sufficiently alleged the deprivation of her constitutional right to be free from the use of excessive force, the court now turns to whether this right was clearly established. It is clearly established that the use of excessive force in effectuating a seizure constitutes a violation of the Fourth Amendment. *Graham,* 490 U.S. at 394, 109 S.Ct. 1865. As explained in *Post v. City of Ft. Lauderdale,* 7 F.3d 1552 (11th Cir.1993), "[w]hether a specific use of force is excessive turns on factors such as the severity of the crime, whether the suspect poses an immediate threat, and whether the suspect is resisting or fleeing. Use of force must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id.* at 1559 (quoting *Graham,* 490 U.S. at 394, 109 S.Ct. 1865). Because

of these balancing of factors, "Fourth Amendment jurisprudence has staked no bright line for identifying force as excessive." *Smith v. Mattox,* 127 F.3d 1416, 1419 (11th Cir.1997). "Therefore, unless a controlling and factually similar case declares the official's conduct unconstitutional, an excessive-force plaintiff can overcome qualified immunity only by showing that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw." *Id.*

■ Because absolutely no justification existed for the seizure and concomitant strip search of Sims, not even "arguable" justification, as discussed in Section II.A.2 & II.A.3, the court finds that Deputy Smith was prohibited from employing "any force" against Sims. *Thornton v. City of Macon,* 132 F.3d 1395, 1400 (11th Cir.1998) (In denying the officers qualified immunity on the plaintiffs' Fourth Amendment excessive force claim, the Eleventh Circuit held that where there was no basis upon which to arrest the plaintiffs, "the officers were not justified in using any force, and a reasonable officer thus would have recognized that the force used was excessive.")

The court finds that, under the circumstances in this case, any reasonable officer in either Deputy Smith or Deputy Forehand's position would have known, as in *Thornton,* that forcing Sims to submit to a strip search was objectively unreasonable. The court further finds that any reasonable officer in the same situation would have known and believed that the force was excessive. In other words, the court finds that the unlawfulness of deputies Smith and Forehand's conduct was apparent. Accordingly, the court finds that deputies Smith and Forehand's Motion To Dismiss based on the affirmative defense of qualified immunity is due to be denied on Sims' Fourth Amendment excessive force claim.[8]

---

8. The court also finds that Sims has stated her Fourth Amendment excessive force claim

with "some factual detail," as required under *Oladeinde,* 963 F.2d at 1485.

## B. Sheriff Glover

Under her Fourth Amendment excessive force claim, Sims seeks to hold Sheriff Glover liable on a supervisory failure-to-train theory. (Am.Compl.¶ 15F.) Sims' grounds for imposing liability against Sheriff Glover are the identical grounds she asserted in attempting to hold Sheriff Glover liable for a violation of her Fourth Amendment right to be free from unreasonable searches and seizures. Thus, for the same reasons discussed in Section II.B above, which the court incorporates by reference herein, the court finds that Sims has failed to plead with specificity her Fourth Amendment excessive force claim brought under § 1983 against Sheriff Glover in his individual capacity. Accordingly, this claim is due to be dismissed.

### VII. Right To Bodily Privacy

Finally, Sims alleges that Defendants violated her right to privacy. Specifically, she alleges that she had a constitutional "right to privacy for her person and the strip search by [deputies] Forehand and Smith . . . deprived [Sims] of this right." (Am.Compl.¶ 15D.) Further, she alleges that Sheriff Glover "failed to protect this right by failing to provide adequate supervision and training." (Id.)

It is not clear under which Amendment Sims brings this claim. To the extent that Sims is attempting to state a substantive due process claim under the Fourteenth Amendment as suggested by Defendants, (Mem. at 7), the court finds that the Fourth Amendment protects against improper invasions of bodily integrity during a search. See Justice v. City of Peachtree City, 961 F.2d 188, 193 (11th Cir.1992) ("accept[ing] as axiomatic the principle that people harbor a reasonable expectation of privacy in their 'private parts' "). As discussed above in Section IV.B, the

Fourteenth Amendment's Substantive Due Process Clause is limited in scope and does not apply when there is a specific constitutional protection against a particular type of alleged violative government conduct. Accordingly, the court finds that Sims' claim seeking redress for a deprivation of her right to privacy is due to be dismissed as redundant of her claims under the Fourth Amendment.[9]

### CONCLUSION

In sum, Sims' § 1983 action may proceed against deputies Smith and Forehand in their individual capacities on her Fourth Amendment unreasonable search and seizure claims and her Fourth Amendment excessive force claim. Sims has pleaded these claims with the "factual detail" required under Oladeinde, 963 F.2d at 1485, and her allegations, if true, would overcome the defense of qualified immunity. However, all of Sims' remaining claims, including all claims asserted against Sheriff Glover, are due to be dismissed.

### ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Defendants' Motion To Dismiss be and the same is hereby GRANTED in part and DENIED in part as follows:

(1) all claims against Sheriff Glover in his individual capacity be and the same are hereby DISMISSED WITH PREJUDICE and that Sims takes nothing from her said suit against Sheriff Glover;

(2) Sims' claims under 42 U.S.C. § 1985 be and the same are hereby DISMISSED WITH PREJUDICE;

(3) Sims' claims under 42 U.S.C. § 1983, with the exception of her Fourth Amendment unreasonable search and seizure claims and her Fourth Amendment exces-

---

9. In the alternative, the court finds that Sims has not met her burden of heightened pleading. Sims alleges an abstract right without pointing to any constitutional Amendment that she believes has been violated. See GJR Investments, 132 F.3d at 1359 (in dismissing plaintiff's § 1983 "shotgun" claims for failure to meet the heightened pleading requirement, the Eleventh Circuit stated that "it is unclear from the complaint exactly which of [the plaintiff's] constitutional rights it feels the defendants have violated.").

sive force claim set forth in ¶¶ 15A, 15B and 15F of her Amendment Complaint, be and the same are hereby DISMISSED WITH PREJUDICE;

(4) Deputy Smith and Deputy Forehand's Motion To Dismiss Sims' Fourth Amendment unreasonable search and seizure claims and her Fourth Amendment excessive force claim against them in their individual capacities based on the affirmative defense of qualified immunity be and the same is hereby is DENIED;

(5) the Parties are PERMITTED to engage in discovery limited to the issue of qualified immunity and deputies Smith and Forehand, if desired, may file a Motion For Summary Judgment on the issue of qualified immunity. Said Motion For Summary Judgment must be fully briefed and filed on or before December 17, 1999. Sims shall have seven days from the date of Defendants' filing to file a fully briefed response. If a Motion For Summary Judgment is not filed on or before December 17, 1999, a Rule 16 Order will be entered and the case set for trial.