Tiffany TOWNSEND, Plaintiff,

v.

COFFEE COUNTY, GEORGIA, a Political Subdivision of the State of Georgia, and Wayne Grantham, Individually and as a Deputy of the Coffee County Sheriffs Office and as an Agent of Coffee County, Georgia, Defendants.

No. CV 511–008.

United States District Court,
S.D. Georgia,
Waycross Division.

Aug. 9, 2011.

Kimberly L. Copeland, Jesup, GA, Tyrone Nathaniel Haugabrook, II, Copeland, Haugabrook & Walker, Valdosta, GA, for Plaintiff.

Richard K. Strickland, Garret W. Meader, Brown, Readdick, Bumgartner, Carter, Strickland, & Watkins, LLP, Brunswick, GA, for Defendant.

## *ORDER*

LISA GODBEY WOOD, Chief Judge.

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, Defendants' motion is **GRANTED.**

### BACKGROUND

For purposes of this Motion to Dismiss, the allegations in Plaintiff's Complaint are taken as true. *See Powell v. Lennon,* 914 F.2d 1459, 1464 (11th Cir.1990). On December 2, 2008, Plaintiff Tiffany Townsend, a black female, was driving with a passenger in Coffee County, Georgia. While stopped at a red light, Plaintiff observed a black male driver approaching the intersection with sparks coming from his vehicle. As he came to a stop, Plaintiff approached to inquire if the driver was safe and to advise him to move his vehicle from the roadway. The driver moved his vehicle to a parking lot across the street. Plaintiff followed him and exited her vehicle to inquire again whether he needed assistance. A white female motorist also pulled into the parking lot and proceeded toward the male driver.

At that time, law-enforcement officer Lieutenant Julie Phillips pulled into the parking lot and ordered Plaintiff to return to her vehicle. Plaintiff immediately headed back to her vehicle. As Plaintiff was walking, Coffee County Sheriff's Deputy Wayne Grantham also pulled into the parking lot. Defendant Grantham ordered Plaintiff to stop. Plaintiff, confused as to which officer's instructions she should follow, informed Grantham that Lieutenant Phillips had instructed her to return to her vehicle and that she was doing so.

As Plaintiff proceeded to her vehicle, Grantham unholstered his service revolver and told Plaintiff to place her hands on the back of his patrol car and to spread her legs. Grantham did not address the other female motorist who had stopped in the parking lot. Grantham approached Plaintiff, grabbed her arm, placed his weapon to her head, and handcuffed her. Plaintiff asked Defendant why he was treating her differently from the white female motorist. Plaintiff "recalls Defendant Grantham's [response] being, "I don't want her ... I just want you." Plaintiff began to weep in the parking lot while handcuffed. After leaving the scene, Plaintiff presented herself at Coffee Regional Medical Center, where her arm was placed in a sling, and she received pain medication and treatment for emotional distress.

Plaintiff filed suit based on this incident against both Deputy Grantham, individually and in his official capacity, and Coffee County. She initially filed her Complaint in the Superior Court of Coffee County, Georgia, and Defendants removed the case to federal court. Plaintiff asserts claims against Deputy Grantham, individually and

in his official capacity, for false arrest/false imprisonment (Count I); against Grantham for assault and battery (Count II);[1] against Grantham, in his individual and official capacities, for negligent/intentional infliction of emotional distress (Count III); and against both Grantham and Coffee County under 42 U.S.C. § 1983 for violations of her Fourth, Fifth, Sixth, and Eighth Amendment rights (Count IV).[2] Plaintiff also seeks punitive damages against Grantham (Count V). Defendants now move to dismiss all counts of Plaintiff's Complaint.

**LEGAL STANDARD**

A 12(b)(6) motion to dismiss tests the sufficiency of a plaintiff's complaint. *See* Fed.R.Civ.P. 12(b)(6). The Court must accept the factual allegations in the complaint as true, but is not bound to accept as true any "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) (internal quotation marks omitted).

To state a claim for relief, the pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). That statement serves to "give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 319, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (quoting *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 346, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)). This is a liberal pleading standard

---

1. Plaintiff does not specify whether her assault and battery claim is against Defendant Grantham in his individual or official capacity, or both.

2. Plaintiff lists only these four amendments in the heading of Count IV, but also alleges a violation of her Fourteenth Amendment rights in the text of Count IV. Compl. ¶ 27, ECF No. 1.

that "do[es] not require that a plaintiff specifically plead every element of a cause of action." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). Rather, a 12(b)(6) motion to dismiss should only be granted if the plaintiff is unable to articulate enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545, 127 S.Ct. 1955.

## DISCUSSION

### I. Section 1983 Claims

Plaintiff asserts federal-law claims under 42 U.S.C. § 1983 against both Defendants for violations of her federal constitutional rights.

### A. Defendant Coffee County

■ The Eleventh Circuit has rejected the notion that a Georgia county can be liable under § 1983 for the actions of members of a sheriff's office, finding that, pursuant to the Georgia Constitution, a sheriff's office is independent from the county in which it operates. *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1332, 1335 (11th Cir. 2003). Sheriffs are agents of the state of Georgia, rather than of the counties. *Id.* at 1333. "In contrast to the State, counties have no authority or control over, and no role in, Georgia sheriffs' law enforcement function." *Id.* at 1336. By extension, sheriff's deputies are likewise not considered county actors. *See id.* ("Georgia courts have concluded that sheriffs' deputies are employees of the sheriff and not the county."). "Georgia courts also speak with unanimity in concluding that a defendant county cannot be held liable for the tortious actions of the sheriff or his deputies in performing their law enforcement activities." *Id.* at 1337 (citing *Wayne Cnty. Bd. of Comm'rs v. Warren*, 236 Ga. 150, 223 S.E.2d 133, 134 (1976)); *see also Lamb v. Davis*, CV208–160, 2009 WL 982037, at *1 (S.D.Ga. Apr. 10, 2009)

(Alaimo, J.) ("The Sheriff's Department, rather than the county government in the county where the department is located, is responsible for the law enforcement functions and acts of the Sheriff's deputies.").

■ The *Grech* court explained further that a county "is not liable for § 1983 violations except for those policies and customs for which the county entity has some control and responsibility." *Id.* at 1343. A county will not be held liable for a deputy's actions on a theory of respondeat superior. A contrary result "would ignore *Monell's* and Georgia law's conception of counties as corporations that act through a governing body … and would impose even broader liability than the respondeat superior liability rejected in *Monell.*" *Id.*; *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Therefore, any claim Plaintiff may be attempting to assert against Defendant Coffee County because it "authorized Defendant Grantham in his actions," *see* Compl. ¶ 31, is subject to dismissal.

■ A well-pled claim that Coffee County violated Plaintiff's constitutional rights through a custom or policy for which the county had some control or responsibility, however, could survive this motion. Plaintiff alleges that Coffee County inadequately trained sheriff's deputies, failed to train and control Defendant Grantham, and negligently hired Grantham. Compl. ¶¶ 32–33. The County, however, had no control over the training, control, or hiring of deputies employed by the Sheriff's Office. *See Grech*, 335 F.3d at 1336 ("Counties [ ] have no role in the training or supervision of the sheriff's deputies. Instead, sheriffs exercise authority over their deputies independent from the county. Sheriffs alone

hire and fire their deputies."). Though Plaintiff uses the words "custom," "practice," and "usage," Compl. ¶ 34, she has not alleged that the County had any control over Defendant Grantham, and *Grech* and its progeny make it clear that the County is not liable for Deputy Grantham's law-enforcement activities.[3] *See Grech*, 335 F.3d at 1337. Plaintiff's claims against Defendant Coffee County are therefore dismissed.

## B. Defendant Grantham, in his Official Capacity

■ Defendant argues that he is entitled to Eleventh Amendment immunity[4] from all federal-law claims asserted against him in his official capacity as a sheriff's deputy. Plaintiff's sole response to this argument is: "Plaintiff agrees that district courts have found that deputy sheriffs are entitled to claim immunity. To the extent that there is no Eleventh Circuit authority on point, the Plaintiff shows that deputy sheriffs in Georgia cannot claim Eleventh Amendment immunity...." Resp. 11. Plaintiff does not, however, go on to "show" how deputy sheriffs cannot claim Eleventh Amendment immunity; rather, Plaintiff ignores relevant Eleventh Circuit authority, specifically *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir.2003).

■ The Eleventh Amendment bars suit when a state itself is sued or when an "arm of the State" is sued. *Manders*, 338 F.3d at 1308. "Whether a defendant is an 'arm of the state' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Id.* In making this determination, the Court considers four factors set forth in *Manders*: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* at 1309.

First, as discussed *supra*,[5] a Georgia sheriff's office is independent from the county in which it sits, and is subject to control by the state legislature. *See Manders*, 338 F.3d at 1310. This factor supports granting Eleventh Amendment immunity to a sheriff, and by extension, his deputies. Second, the state has "direct and substantial control" over a sheriff's office. *Id.* at 1322. This factor also supports granting a sheriff's deputy Eleventh Amendment immunity. The third factor, however, cuts both ways: the state of Georgia "funds the annual training of sheriffs, funds the Governor's disciplinary procedure over sheriffs for use of excessive force, and pays for certain state offenders assigned to the county jails under the sheriff's supervision," but the county funds the majority of the expenses of a sheriff's office (jails, the sheriff's salary, and the premium for the sheriff's official bond). *See id.* at 1323. Fourth, a Georgia county is not monetarily responsible for judgments against a sheriff in tort or civil rights actions, but there is no law expressly requiring the state to pay such a judg-

---

3. Plaintiff claims that "this is a factual question that can only be determined following the close of discovery." Pl.'s Resp. 11. The Court does not expect Plaintiff to offer evidence of such control at this stage, however, but merely a legally sufficient allegation. Plaintiff has not met this 12(b)(6) burden.

4. The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

5. *See supra* Part I.A.

ment, so a sheriff would have to pay that judgment out of his sheriff's office budget. *Id.* at 1327. Thus, in a way, both county and state funds might be implicated if a judgment were entered against Deputy Grantham.

In light of all these factors, the Eleventh Circuit found in *Manders* that a sheriff was an "arm of the state" when his use-of-force policy at a jail was at issue. *Id.* at 1328. Although the present case involves law-enforcement functions of a sheriff's office (investigatory stop and arrest),[6] rather than jail functions, the *Manders* factors inform the Court's analysis in reaching the same conclusion as the Eleventh Circuit did in *Manders*: Deputy Grantham was acting as an "arm of the state" during the incidents about which Plaintiff complains. As the *Manders* court noted, the state alone—not the county—has delegated to the sheriff's office the specific duty of law enforcement. *Id.* at 1312. Investigatory stops and arrests fall squarely within the traditional law-enforcement responsibilities of a sheriff and his deputies.[7] Further-

more, this and other courts have applied the *Manders* factors to reach this conclusion in the context of law-enforcement functions.[8] Defendant Grantham is entitled to Eleventh Amendment immunity, and the § 1983 claims Plaintiff brings against him in his official capacity are dismissed.

## C. Defendant Grantham, in his Individual Capacity

Defendant asserts the defense of qualified immunity against the § 1983 claims Plaintiff brings against him in his individual capacity. Plaintiff has alleged that Defendant Grantham violated her constitutional rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. The Court will address Grantham's qualified immunity defense only in the context of the Fourth Amendment, however, as dismissal of the other constitutional claims is appropriate on other grounds.

---

6. Plaintiff and Defendant dispute whether an arrest actually occurred. Plaintiff alleges that she was arrested, *see* generally Compl., while Defendant claims that she was in fact "only briefly detained and released" and "was never charged or cited for the commission of any offense." Defs.' Br. 6 n. 4, ECF No. 9–1. For purposes of a motion to dismiss, however, Plaintiff's allegations must be taken as true. *Powell v. Lennon*, 914 F.2d 1459, 1464 (11th Cir.1990).

7. *See infra* Part I.C.5.(a).

8. *See Lewis v. Wilcox*, 3:06–CV–29, 2007 WL 3102189, at *9 (M.D.Ga. Oct. 23, 2007) ("Law enforcement, like corrections, is an area over which Georgia sheriffs exercise complete and independent control. Consequently, the factors as applied in *Manders* inform the Court's decision in this case." (internal citation omitted)); *Scott v. Mercier*, CV506–33, 2007 WL 2728440, at *3–4 (S.D.Ga. Sept. 14, 2007) (Wood, J.) (applying *Manders* factors to find deputy sheriff entitled to Eleventh Amendment immunity where the deputy's excessive

use of force was at issue outside of a prison setting and stating, "While *Manders* concerned the Sheriff's use of force policy at the jail, there is no significant distinguishing factor present in this case that would permit the Court to avoid the result of Manders."); *Scruggs v. Lee*, 7:05–cv–95, 2006 WL 2850427, at *5 (M.D.Ga. Sept. 30, 2006) (finding that *Manders* factors applied with equal force where sheriff's policies under review involved the use of roadblocks, canine units, searches, seizures, arrests, and detentions, and finding that the sheriff acted as an arm of the state in carrying out those policies). *But see Kicklighter v. Herrin*, No. CV206–77, 2007 WL 2248089, at *8 (S.D.Ga. July 31, 2007) (Moore, C.J.) (declining to extend Eleventh Amendment immunity under *Manders* to a sheriff whose law-enforcement functions of obtaining and executing search warrants were at issue, while not addressing the four *Manders* factors in detail as applied to the particular case).

### 1. Fifth Amendment

■ The Fifth Amendment, which protects individuals from being "deprived of life, liberty, or property, without due process of law," U.S. Const. amend. V, applies only to federal, not state, actors. *Jordan v. Mosley*, 298 Fed.Appx. 803, 806 n. 5 (11th Cir.2008) (citing *Knoetze v. U.S. Dep't of State*, 634 F.2d 207, 211 (5th Cir.[9] 1981)). Plaintiff alleges neither that Defendant Grantham is a federal actor, nor that the federal government in any way denied Plaintiff a liberty or property interest. Furthermore, Plaintiff concedes that the Fifth Amendment "applies primarily to federal actors," yet offers no explanation of why it should apply nonetheless to the named Defendants. Resp. 3, ECF No. 18. Accordingly, Plaintiff's Fifth Amendment claim is dismissed.

### 2. Sixth Amendment

■ The Sixth Amendment provides, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury...." U.S. Const. amend. VI. As Defendant notes, the basis for Plaintiff's Sixth Amendment claim is not clear, *see* Defs.' Br. 5, but the law is clear that Sixth Amendment protections do not attach at the time of an arrest. *See United States v. Gouveia*, 467 U.S. 180, 190, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). Rather, they attach "only after the government initiates adversarial judicial proceedings." *United States v. Langley*, 848 F.2d 152, 153 (11th Cir.1988). Plaintiff does not allege that any adversarial judicial proceedings were initiated against her; at most, she was arrested and released at the scene. Furthermore, Plaintiff concedes in her Response the inapplicability of the Sixth Amendment to the facts. Resp. 3. Therefore, her Sixth Amendment claim is dismissed.

### 3. Eighth Amendment

■ The Eighth Amendment's prohibition against "cruel and unusual punishment," U.S. Const. amend. VIII, "applies only to punishments inflicted after conviction for crimes." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1295 (11th Cir. 2005), Plaintiff does not even allege that she was charged with—much less convicted of—a crime. On this issue, Plaintiff simply "concedes that she was not injured while incarcerated after conviction." Resp. 3. Accordingly, Plaintiff's Eighth Amendment claim is dismissed.

### 4. Fourteenth Amendment

The Fourteenth Amendment prohibits state actors "from depriving a person of life, liberty or property without due process of law." *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1199 (11th Cir.2011) (citing U.S. Const. amend. XIV). Plaintiff asserts violations of both her procedural and substantive due process rights under the Fourteenth Amendment.

#### (a) Procedural Due Process

■ To prevail on a procedural due process claim, a plaintiff must establish: "(1) a constitutionally protected interest in life, liberty or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation." *Bank of Jackson Cnty. v. Cherry*, 980 F.2d 1362, 1366 (11th Cir.1993). Procedural due process protections do not attach, however, until after an arrest is completed, the plaintiff has been released from the arrest-

---

**9.** The Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit prior to October 1, 1981.

*Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981).

ing officer's custody, and pretrial detainment begins. *Garrett v. Athens–Clarke Cnty.*, 378 F.3d 1274, 1279 n. 11 (11th Cir.2004) (citing *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998)).[10] In this case, Plaintiff has not alleged that any pretrial detainment commenced. All she has alleged is that she was handcuffed, but then "le[ft] the scene." Compl. ¶¶ 14–15. Therefore, to the extent Plaintiff asserts a procedural due process claim, it is dismissed.

#### (b) Substantive Due Process

 Plaintiff's substantive due process claim also fails, because the Eleventh Circuit has held that the Fourth, not Fourteenth, Amendment provides Plaintiff an explicit source of constitutional protection against excessive force during an arrest. *See Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1248 n. 2 (11th Cir.2004) ("The Supreme Court in *Graham* made explicit . . . [that] '*all* claims that law enforcement officers have used excessive

force [ ] in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.' " (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989))). "If an Amendment provides an explicit textual source of constitutional protection against the sort of conduct complained of, that Amendment—not the more generalized notion of substantive due process under the Fourteenth Amendment—is the guide for analyzing the claim." *Jordan v. Mosley*, 298 Fed.Appx. 803, 805 (11th Cir.2008). Both Plaintiff's excessive force and unreasonable seizure claims are covered by the Fourth Amendment. Moreover, Plaintiff concedes in her Response that "[t]o the extent that [her Fourth and Fourteenth Amendment] claims are duplicative, . . . the Fourth Amendment analysis should be employed." Resp. 9.[11] Thus, Plaintiff's

10. In her Response, Plaintiff argues that *Garrett* is inapposite because it addressed a Fourth Amendment excessive force claim, not a claim under the Fourteenth Amendment. Resp. 4. *Garrett* cites to *Gutierrez* for the aforementioned principle, however, and *Gutierrez* involved a Fourteenth Amendment claim. The *Gutierrez* court specifically stated that Fourteenth Amendment protections do not attach until " 'after the incidents of arrest are completed, *after* the plaintiff has been released from the arresting officer's custody, and *after* the plaintiff has been in detention awaiting trial for a significant period of time.' " 139 F.3d at 452 (quoting *Valencia v. Wiggins*, 981 F.2d 1440, 1443 (5th Cir.1993)). Plaintiff has offered no Eleventh Circuit authority to the contrary, and the Court does not find *Garrett* inapposite. *See Crosby v. Perry*, No. 4:09–CV–139, 2010 WL 2464887, at *6 n. 6 (M.D. Ga. June 14, 2010) (noting that " 'the precise point at which a seizure ends (for purposes of Fourth Amendment coverage) and at which pretrial detention begins,' accompanied by Fourteenth Amendment protections, is not settled in this Circuit," (quoting

*Hicks v. Moore*, 422 F.3d 1246, 1253 n. 7 (11th Cir.2005)), but that "[o]ther circuits have concluded that Fourteenth Amendment analysis does not begin until after the plaintiff has been released from the arresting officer's custody").

11. Plaintiff cites *Lewis v. Wilcox*, No. 3:06–CV–29, 2007 WL 3102189, at *6 (M.D.Ga. Oct. 23, 2007), for the proposition that "in circumstances involving police pursuit and apprehension, the Fourteenth Amendment may sustain a substantive due process challenge if the Plaintiff cannot demonstrate a Fourth Amendment violation." Plaintiff ignores, however, the *Lewis* court's preceding statement: "A Fourteenth Amendment claim may be properly raised only when no other amendment more specifically addresses the alleged deprivation." *Id.* In Plaintiff's case, the Fourth Amendment specifically addresses her claims of excessive force and unreasonable seizure; therefore, *Lewis* actually supports dismissal of Plaintiff's substantive due process claim.

substantive due process claim is also dismissed at this time.

### (c) Equal Protection

 In her Response, Plaintiff clarifies that she is alleging a violation of her rights under the Equal Protection Clause of the Fourteenth Amendment because "she was treated differently on account of her race from similarly situated persons."[12] Resp. 5 (citing Compl. ¶ 26).[13] To prevail on such a "class of one" equal protection claim, Plaintiff "must show that [she was] intentionally treated differently from others who were 'similarly situated' and that there is no rational basis for the difference in treatment." *Grider v. City of Auburn*, 618 F.3d 1240, 1263–64 (11th Cir. 2010) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 565, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)). Plaintiff was not similarly situated to the white female motorist because Plaintiff was outside of her car, speaking to the officers, walking around, and was given instructions by two officers (one of whom she failed to obey); whereas Plaintiff's Complaint does not allege that the white female motorist ever exited her vehicle or interacted with the officers. Even if they were deemed similarly situated, however, Defendant Grantham had a rational basis for treating Plaintiff differently: she explicitly refused to comply with his instructions to halt so that

he could manage the scene to which he had been called.[14]

### 5. Fourth Amendment

 Plaintiff asserts both unreasonable seizure and excessive force claims against Defendant Grantham under § 1983, properly invoking the Fourth Amendment.[15] *See* Resp. 6. Defendant Grantham claims he is entitled to qualified immunity against this claim. A law-enforcement official sued under § 1983 may be protected from liability under the doctrine of qualified immunity if the official "was acting within his discretionary authority and his conduct did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir.2009) (citing *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291 (11th Cir.2009)). Qualified immunity exists "to allow officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.' " *Oliver v. Fiorino*, 586 F.3d 898, 904 (11th Cir.2009) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir.2002)).

### (a) Discretionary Act

 Defendant Grantham was clearly acting within the scope of his dis-

---

**12.** Plaintiff notes further that she brings this claim against Defendant Grantham in his individual capacity. Resp. 18.

**13.** Paragraph 26 of Plaintiff's Complaint, found under the Count IV heading for "Section 1983, Fourth, Fifth, Sixth, and Eighth Amendment [ ] Violation," reads: "Defendant Grantham's unholstering his weapon, and arresting Plaintiff Townsend while allowing the white female motorist beside Plaintiff Townsend to remain free subjected Plaintiff to a deprivation of her rights, privileges, and im-

munities secured by the Federal Constitution and laws." Compl. ¶ 26.

**14.** *Cf. also infra* Part 1.5.(b)(II) (discussing Georgia misdemeanor offense of obstruction of an officer).

**15.** "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the right to be free from excessive force during the course of a criminal apprehension." *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir.2009).

cretionary authority when the underlying events occurred. *See Oliver*, 586 F.3d at 905. "Discretionary authority includes all acts of a governmental official that were (1) undertaken pursuant to the performance of his duties and (2) within the scope of his authority." *Howell v. City of Lithonia*, 397 Fed.Appx. 618, 620 (11th Cir.2010) (citing *Jordan v. Doe*, 38 F.3d 1559, 1565 (11th Cir.1994)). Carrying out an investigatory stop and making an arrest are quintessentially discretionary acts of law-enforcement officials. *See, e.g., Howell*, 397 Fed.Appx. at 620 (finding that "making an arrest clearly fell within the scope of [the defendant's] authority as a police officer"); *Peach State Recovery, Inc. v. Goodwin*, 290 Fed.Appx. 233, 234 (11th Cir.2008) (rejecting appellants' argument that the district court erred in finding that the defendant officer was acting within the scope of his discretionary authority at the time of the arrest); *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir.2004) ("[M]aking an arrest is within the official responsibilities of a sheriff's deputy...."). Thus, the burden shifts to Plaintiff to demonstrate that Defendant Grantham is not entitled to qualified immunity. *Oliver*, 586 F.3d at 905.

#### (b) Was There a Violation of Clearly Established Constitutional Law?

Plaintiff claims that Defendant Grantham violated her Fourth Amendment rights in two ways: by using excessive force in arresting her, and by arresting her without probable cause (unreasonable seizure). The Court addresses each claim

individually for purposes of the qualified immunity analysis.

### (I) Excessive Force

 First, Plaintiff's excessive-force claim is analyzed under an objective-reasonableness standard. *Oliver*, 586 F.3d at 905. To determine whether Defendant Grantham's use of force was objectively reasonable, the Court must consider his actions " 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.' " *Id.* (quoting *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1249 (11th Cir. 2004)).

 Accepting as true the allegations in Plaintiff's Complaint, Plaintiff verbally acknowledged to Deputy Grantham that she was not going to comply with his command to stop. Compl. ¶ 11. In response to Plaintiff's noncompliance, Defendant Grantham "grabbed her arm, placed his weapon to her head, and put her in handcuffs." *Id.* at ¶ 13.[16] As a result, Plaintiff suffered an injury to her right arm, for which she received a sling and pain medication. *Id.* at ¶ 15. In light of applicable authority, the Court finds Defendant's conduct reasonable under the circumstances.

In *Jones v. City of Dothan*, where the plaintiff was even more compliant than Plaintiff Townsend, and the police officers used greater force than did Defendant Grantham, the Eleventh Circuit found that there was no constitutional violation and granted the officers qualified immunity on an excessive force claim. 121 F.3d 1456, 1458, 1460–61 (11th Cir.1997). There, the facts viewed in the light most favorable to

---

**16.** In her Response, Plaintiff offers a slightly different account of the facts than she did in her Complaint: Defendant Grantham drew a handgun on her, handcuffed her, and "[threw] her against a patrol car." Resp. 14. Nowhere in Plaintiff's Complaint does she allege that Grantham threw her against the

car; instead, she alleges only that Grantham instructed her "to place her hands on the back of his patrol car and to spread her legs." Compl. ¶ 12. Under either version of the facts, however, *Jones v. Dothan*, 121 F.3d 1456 (11th Cir.1997), guides the Court's analysis. *See infra*.

plaintiff Jones showed that the officers arrived at a Dairy Queen to look for a man whom a woman complained had harassed her. *Id.* at 1458. The officers saw Jones exiting the restroom, and believed he might be the harasser because he approximately matched a physical description of the harasser. *Id.* The officers approached Jones, told him he had to step outside, and escorted him outside by his arm and belt. *Id.* Jones asked the officers why they were treating him this way, told them he had done nothing wrong, and informed them that he had previously suffered a stroke for which he was on medication. *Id.* Once outside, however, the officers " 'slammed' Mr. Jones against a wall, kicked his legs apart, required him to put his arms above his head, and pulled his wallet from his pants pocket. In the process, his pants were torn and the wallet contents were scattered on the ground." *Id.* As a result of the defendants' use of force, Jones experienced pain in his arms and knee and received minor medical treatment for the knee pain. *Id.* at 1460.

The Eleventh Circuit's conclusion in *Jones* is equally applicable to the facts of the present case: "While use of force against Mr. Jones may have been unnecessary, the actual force used and the injury inflicted were both minor in nature. Given such variables, the application of the excessive force standard would not inevitably lead an official in [the defendant officers'] position to conclude that the force was unlawful." *Id.* at 1460–61. Even accepting the allegations in Plaintiff's Complaint as true, Plaintiff has not shown that Grantham violated clearly established law in the force he employed. Accordingly, Defendant Grantham is entitled to qualified immunity on Plaintiff Townsend's § 1983 excessive force claim, and the claim is dismissed.

### (II) Unreasonable Seizure

 Second, Defendant Grantham is also entitled to qualified immunity on Plaintiff's claim that he violated her Fourth Amendment rights by arresting her without probable cause (thus effectuating an unreasonable seizure). In a Fourth Amendment analysis of an arrest, the standard is *arguable,* not actual, probable cause. *Skop v. City of Atlanta,* 485 F.3d 1130, 1137–38 (11th Cir.2007). Whether an arresting officer possesses arguable probable cause depends on the elements of the alleged offense and the totality of the circumstances. *Id.* Arguable probable cause exists if "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[ ] could have believed that probable cause existed to arrest." *Id.* at 1137 (quoting *Lee,* 284 F.3d at 1195) (internal quotation marks omitted). "This standard recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who *unreasonably* conclude that probable cause exists." *Id.*

 Defendant Grantham claims that he possessed arguable probable cause to detain Plaintiff for the statutory misdemeanor offense of obstruction of an officer. Defs.' Br. 15 (citing O.C.G.A. § 16–10–24(a)). O.C.G.A. § 16–10–24(a) provides: "[A] person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." Plaintiff admits that she refused to comply with Defendant Grantham's verbal command to halt. Compl. ¶¶ 11–12. Plaintiff views her statements to Defendant Grantham, however, as "demonstrat[ing] that she was confused as to what to do as she was told by another officer to return to her car," rather than as a failure to comply with an officer's commands. Resp. 15. Even

viewing Plaintiff's words and conduct toward Deputy Grantham as expressing confusion, the objective facts before Grantham remained the same: Plaintiff was noncompliant with his orders. Refusing to comply with an officer's command is sufficient to form the basis of an obstruction charge. *See Zeger v. State*, 306 Ga.App. 474, 702 S.E.2d 474, 476–77 (2010) (finding evidence sufficient to show obstruction where defendant disobeyed officer's commands to drop a weapon); *Council v. State*, 291 Ga.App. 516, 662 S.E.2d 291, 293 (2008) (citing *Arsenault v. State*, 257 Ga.App. 456, 571 S.E.2d 456 (2002)) (holding that "a refusal to comply with an officer's lawful demand to remain in a vehicle [while the officer is completing an investigation] will sustain a conviction for misdemeanor obstruction"); *Johnson v. State*, 234 Ga.App. 218, 507 S.E.2d 13, 15 (1998) (finding evidence "sufficient to present a jury question on the obstruction charge" where defendant refused to exit his vehicle when instructed to do so by an officer); *Larkin v. State*, 230 Ga.App. 129, 495 S.E.2d 605 (1998) (finding evidence sufficient to sustain denial of defendant's motion for directed verdict where defendant had "refused [the officer's] command to return to his car, created a disturbance, and hindered police from arresting his brother-in-law").

Defendant Grantham also faced other factors during the situation; for example, he was cognizant that "a fellow officer was engaged with a suspect while the plaintiff was being non-compliant" and had to make decisions based on the immediate situation. Defs.' Br. 15. Viewing the totality of the circumstances, and taking the allegations in Plaintiff's Complaint as true, the Court cannot say that Defendant did not possess at least arguable probable cause to detain and arrest Plaintiff for the misdemeanor offense of obstructing an officer.

## II. State-law Claims

Having dismissed all federal claims over which this Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over Plaintiff's remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir.2004) (encouraging district courts to dismiss any remaining state claims where federal claims have been dismissed prior to trial).

## III. Plaintiff's Motion for Limited Discovery

In her Response', Plaintiff asks that if the Court finds that the Complaint does not provide a sufficient factual basis, it allow her to "conduct limited discovery into any issue this Court deems questionable." Resp. 21.[17] Not only is this request (which is inserted only at the end of Plaintiff's Response) not properly raised as a motion to this Court, but the discovery it seeks would eviscerate the purpose of Rule 12(b)(6)—that is, to prevent unnecessary, costly discovery on claims for which Plaintiff has not sufficiently stated a claim for relief.

## CONCLUSION

Defendants' Motion to Dismiss is hereby **GRANTED.** Plaintiff's Complaint is **DIS-**

---

17. Plaintiff incorrectly cites *Sims v. Glover*, 84 F.Supp.2d 1273, 1284 (M.D.Ala.1999), for the proposition that the Court may allow limited discovery on any "questionable" issue. In *Sims*, the court denied the defendants' motion to dismiss on grounds of qualified immunity, and directed them to "file a fully briefed motion for summary judgment on the issue of qualified immunity ... if they believe that evidence exists outside the facts alleged in the Amended Complaint which would entitle them to qualified immunity." 84 F.Supp.2d at 1284. The *Sims* court did not grant Defendants a limited discovery period, but simply denied the defense of qualified immunity on the motion to dismiss, and noted that the Defendants could later file for summary judgment if they so chose.

**MISSED.** The Clerk of Court is instructed to close the case.