Kenneth Steed **BROWN**, Sr., Individual-ly and as Surviving Spouse of Shirley Joyce Brown, deceased, and Kenneth Steed Brown, Sr., as Administrator of the estate of Shirley Joyce Brown, deceased, Plaintiff,

v.

**NEWTON COUNTY SHERIFF'S OFFICE**, et al., Defendants.

**CIVIL ACTION NO. 1:16–CV–1399–AT**

United States District Court, N.D. Georgia, Atlanta Division.

August 7, 2017

1144

James E. Carter, Carter Cromwell Law Group, for Plaintiff.

Emory Banks Craig, %09William Thomas Craig, Office of William Thomas Craig, William T. Mitchell, Karen Eleice Woodward, Cruser & Mitchell, LLP, for Defendant.

## ORDER

Amy Totenberg, United States District Judge

Shirley Joyce Brown was shot and killed by the police outside her home after she called 911 indicating she was suicidal and wanted the 911 operator to "send someone out to help her die." (Compl., Doc. 1–1 ¶ 21.) Her husband, Plaintiff Kenneth Brown, has sued Defendants for wrongful death under Georgia law and for the violation of Ms. Brown's Fourth Amendment rights under 42 U.S.C. § 1983. This case is now before the Court on Defendants' Motion for Judgment on the Pleadings [Doc. 28], which Mr. Brown opposes. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.

## I. BACKGROUND

The following factual summary is taken from Mr. Brown's Complaint (Compl., Doc. 1–1 at 1–18) and the documents attached to it (Exhibits 1–8, Doc. 1–1 at 19–84).[1] The Court construes this summary in Mr. Brown's favor, and it is not intended to represent actual findings of fact. *See Hill v. White,* 321 F.3d 1334, 1335 (11th Cir. 2003).

Mr. Brown attached the following documents as numbered exhibits to his Complaint:

- Exhibit 1: Various documents generated by the Georgia Bureau of Investigation ("GBI") during its investigation of the shooting of Ms. Brown, which include a review of a police officer's personnel file, interviews with police officers, and statements and sketches provided by police officers regarding the shooting;

- Exhibit 2: The GBI's official report on the autopsy conducted on Ms. Brown;

- Exhibit 3: The "CAD Master Call Table," which is the report generated by the 911 operator from Ms. Brown's 911 call;

- Exhibit 4: The GBI's investigative report compiled on March 31, 2014—the day of the shooting—which includes detailed notes by special agents, a sketch of the scene of the incident, and a legend explaining the sketch;

- Exhibit 5: The incident report generated by the Newton County Sheriff's Office;

- Exhibit 6: The GBI's official report on the forensics analysis of the guns

---

1. Mr. Brown filed an Amended Complaint on July 14, 2016 (Doc. 14), which only included amendments to paragraphs 7, 8, 50, 54, 58, and 60 of the original Complaint. In this way, the Amended Complaint does not replace the original Complaint. Rather, the amended paragraphs are incorporated into the original Complaint, which includes all the other allegations as well as the attached documents. The Court therefore cites to the original Complaint, as amended on July 14th, for purposes of this Order.

and ammunition located at the scene of the incident;

- Exhibit 7: The District Attorney's letter to the GBI Special Agent in Charge detailing her conclusions and recommendations regarding the investigation; and

- Exhibit 8: A letter from Mr. Brown's counsel to Defendants providing notice of Mr. Brown's claims against them.

(Compl., Doc 1–1 at 19–84.) Defendants also reference several of these documents in support of their motion. While Mr. Brown relies on some information within these documents, he also disputes certain information as detailed below. Thus, for purposes of this motion, the Court only considers the portions of the attached documents that Mr. Brown expressly relies on and does not dispute.[2]

At approximately 3:00 P.M. on March 31, 2014, Ms. Brown called the Newton County 911 operator. (Compl. ¶ 18.) Ms. Brown told the operator that she wanted her to send someone to help her die. (Id.) The operator issued a call report to officers on duty stating that "the caller needs help dying" and that the caller had asked the operator "to forget the request if the deputies were not going to kill her." (Id.) Officer Gordon responded to the call report by stating he was en route to the caller's address, and he along with Officer Ramsey drove to Ms. Brown's property. (Id. ¶¶ 18, 20.) Along the way, 911 dispatch informed Officers Gordon and Ramsey that the caller was Shirley Brown and that she had stated she wanted to kill herself. (Id.) In a separate vehicle, Officer Shirley overheard the call report and decided to go to the property as well. (Id. ¶ 22.) The content of the call report—including Ms. Brown's statements about wanting to commit suicide—was relayed to all three officers before they arrived at Ms. Brown's home. (Id. ¶¶ 19, 53.)

Officers Gordon and Ramsey arrived at Ms. Brown's property first. (Id. ¶ They drove up her driveway and approached the carport next to her house. (Id.) As they approached, Ms. Brown came out of her house holding a gun. (Id. ¶ Ms. Brown was 74 years old at the time and weighed 145 pounds. (Id. ¶ 16.) Officers Gordon and Ramsey saw her gun, and as soon as they did, they backed down the driveway away from the carport and the house. (Id. ¶ 23.) As Officer Gordon was backing down the driveway, he reported over the dispatch system that Ms. Brown had a gun. (Id. ¶ 25.) Officer Shirley arrived around the same time that the other two officers were backing down the driveway. (Id. ¶24.)

Officer Gordon stopped his vehicle at "a safer distance" from Ms. Brown on the driveway. (Id. ¶ 26.) Officer Shirley stopped his vehicle near the other officers' vehicle. (Id.) Officers Gordon and Ramsey got out of their vehicle, went to the trunk, and each one grabbed a gun. (Id. ¶¶ 26–28.) Officer Gordon grabbed a shotgun, and Officer Ramsey grabbed an AR–15 .223 rifle. (Id. ¶¶ 27–28.) They then positioned themselves at the rear of Officer Gordon's vehicle. (Id. ¶ 29.) Officer Shirley grabbed an M–16 .223 rifle from the trunk of his own vehicle, got low to the ground, ran to the rear of Officer Gordon's vehicle as well, and positioned himself on the driv-

---

**2.** "Ordinarily, we do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir.1997). This court recognizes an exception, however, in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, *its contents are not in dispute*, and the defendant attaches the document to its motion to dismiss." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (emphasis added).

er's side of the vehicle while using it for cover. (*Id.* ¶¶ 30–31.) All three officers had positioned themselves behind Officer Gordon's vehicle at this point, which was about 120 feet away from where Ms. Brown was standing. (*Id.* ¶ 37.) Officer Shirley could see Ms. Brown from this protected position behind the car. (*Id.* ¶ 32.) He aimed the sights of his gun at her "center mass." (*Id.*)

Ms. Brown repeated her wish to die and appeared to be having difficulty handling her rifle. (*Id.* ¶¶ 41–42.) From his protected position, Office Shirley shot Ms. Brown. (*Id.* ¶ 32.) Officer Ramsey, who was similarly positioned at the rear of Officer Gordon's vehicle, stated that he also shot Ms. Brown at about the same time. (*Id.*) None of the officers attempted to use non-deadly means to subdue Ms. Brown before the shooting occurred. (*Id.* ¶¶ 41, 42, 47.)

Ms. Brown was shot twice—once in her chest and once in her abdomen. (*Id.* ¶ 33.) The shooting occurred at approximately 3:14 P.M., about two minutes after Officer Shirley had arrived at the property. (*Id.* ¶¶ 13, 18, 41, 42.) Ms. Brown died from her gunshot wounds. (*Id.* ¶ 13.)

At approximately 3:30 P.M., the Georgia Bureau of Investigation ("GBI") was called in to investigate the shooting of Ms. Brown that had just occurred. (*Id.* ¶ 34.) GBI agents came to the scene of the incident soon after Ms. Brown was shot, and they took notes on their observations, photographed the scene, and also made a sketch of the scene. (*Id.* ¶¶ 34–35.) The GBI later generated an autopsy report on Ms. Brown (Exhibit 2 at 37–41), conducted a forensics analysis of the guns and ammunition collected at the scene of the incident (Exhibit 6 at 67–68), and individually interviewed Officers Ramsey, Shirley, and Gordon regarding the shooting (Exhibit 1 at 22–34) over the course of several weeks. Additionally, as part of their interviews, Officers Ramsey and Shirley each contributed statements describing what happened (Exhibit 1 at 25, 30–31), and Officers Ramsey and Gordon each contributed sketches of the crime scene (Exhibit 1 at 29, 35).

Mr. Brown's Complaint alleges that there are several inconsistencies within the results of the GBI investigation and the Newton County Sheriff's Office's incident report. For one, Mr. Brown discusses the GBI agent's sketch of the two shell casings found at the crime scene. (Compl. ¶ 35.) The sketch shows a .223 caliber shell casing located north and *east* of one police vehicle, and it shows another .223 caliber shell casing located north and *west* of another adjacent police vehicle. (*Id.*) Mr. Brown states that the two shell casings were located on opposite sides of the two vehicles, which were interposed between the two casings. (*Id.*) He alleges that this evidence suggests the shots were fired "from two different weapons by different officers." (*Id.* ¶ 44.) Mr. Brown also points to Officer Gordon's statement—taken within a day of the shooting—that *both* Officers Shirley and Ramsey had discharged their rifles. (*Id.* ¶¶ 36, 38, citing to Exhibits 2 and 5.) Officer Gordon stated that Officer Shirley had positioned himself at the *left* rear of a vehicle with a rifle, and Officer Ramsey had positioned himself at the *right* rear of the same vehicle with a rifle. (*Id.*) However, Mr. Brown alleges that this evidence conflicts with the forensics analysis of the two shell casings found at the crime scene. (*Id.* ¶¶ 44–45.) He states that the analysis revealed "*both* shots had come from *one* rifle, Sgt. Shirley's." (*Id.* ¶ 39.) He further states that the Newton County District Attorney arrived at the same conclusion: Officer Shirley fired both shots. (*Id.*, citing to Exhibits 6 and 7.)

Furthermore, Mr. Brown discusses the GBI agent's sketch of the police vehicles located at the crime scene. According to the sketch, the vehicle that the officers were positioned behind when Ms. Brown

was shot was located approximately *120 feet* or more away from Ms. Brown. (*Id.* ¶ 36.) The sketch includes a curve in the driveway that separated Ms. Brown from the three officers. (*Id.* ¶ 37.) However, Officer Gordon stated that he backed up his car only *50 feet* when he saw Ms. Brown had a gun. (*Id.* ¶ 36, citing to Exhibit 1 at 13.)

Based on these inconsistencies within the GBI investigation, Mr. Brown alleges two possible versions of what happened the day his wife was shot. In one version, Mr. Brown alleges that *only* Officer Shirley shot the two bullets that struck Ms. Brown. (*Id.* ¶ 41.) Mr. Brown alleges that, in less than two minutes, Officer Shirley arrived at Ms. Brown's property, got out of his car, went to his trunk to get a military rifle, went to the rear of Officer Gordon's car, got into a shooting position on the ground, aimed his rifle at her, and shot her—although there was an "absence of any imminent serious threat to himself ... or any third party." (*Id.*) Mr. Brown describes Officer Shirley as shooting Ms. Brown from a "safe position behind Gordon's car," which was about 120 feet away from Ms. Brown and with an intervening curve in the driveway between them. (*Id.*) He also describes Ms. Brown as repeating her wish to die and appearing to have difficulty with her rifle before she was shot. (*Id.*) He states that Officer Shirley shot to kill Ms. Brown "without first attempting either persuasion or the use of nondeadly means to subdue or pacify her." (*Id.*)

Consistent with this version, Mr. Brown further alleges that Officers Ramsey and Gordon, who were subordinates to Officer Shirley, conspired with Officer Shirley to obstruct justice and cover up the fact that he was the only one to shoot Ms. Brown. (*Id.* ¶ 40.) Mr. Brown asserts that the three of them moved one of the shell casings to make it look like the shots were fired from two different rifles instead of just one. (*Id.*) He also asserts that they lied to the GBI in their statements about who fired the shots. (*Id.*)

In Mr. Brown's alternative allegations regarding the shooting incident, he alleges that *both* Officers Shirley and Ramsey shot Ms. Brown. (*Id.* ¶ 42.) Specifically, he alleges that they also shot her within minutes of their arrival on the scene. (*Id.*) They shot her from protected positions behind Officer Gordon's car over 120 feet from where she was standing. (*Id.*) They shot her after she repeated her wish to die and appeared to be having difficulty with her gun. (*Id.*)And they failed to attempt either persuasion or non-deadly means to subdue her before shooting her, "despite the absence of any imminent threat to Defendants Shirley or Ramsey, Cpl. Gordon, or any third party." (*Id.*)

Based on either of these versions of what happened, Mr. Brown asserts that the use of force against his wife was unlawful. (*Id.* ¶¶ 41–42.) He claims that Officers Shirley and Ramsey, in their individual and official capacities,[3] violated Georgia's wrongful death statute as well as 42 U.S.C. § 1983 for their unconstitutional use of force against his wife. (*Id.* ¶¶ 44–54.) In addition, Mr. Brown also brings claims against the Newton County Sheriff's Office and Sheriff Brown in his official capacity. (*Id.* ¶¶ 55–58.) Mr. Brown alleges that the Newton County

---

**3.** The Complaint asserts claims against Officers Ramsey and Shirley in their individual capacities but does not explicitly assert claims against them in their official capacities. However, the Court construes the Complaint as asserting claims against these Defendants in both their individual and official capacities, since the caption of the Complaint states that they are being sued in both capacities. Defendants' Motion for Judgment on the Pleadings also interpreted the Complaint in this way, and therefore all parties have had the opportunity to address both aspects of these claims.

Sheriff's Office and Sheriff Brown violated § 1983 by having a "custom or policy, under color of state law," of failing to train officers on how to use non-deadly means when handling mentally unstable or suicidal individuals. (*Id.* ¶ 57.) He alleges that this violation caused Officers Shirley and Ramsey to use unlawful deadly force against Ms. Brown. (*Id.*)

## II. LEGAL STANDARD

"Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d 1367, 1370 (11th Cir. 1998) (citing Fed. R. Civ. P. 12(c)). The legal standard for assessing a motion for judgment on the pleadings is the same as the standard for a motion to dismiss under Rule 12(b)(6). *Id.*

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1216 (3d ed. 2002); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 677–78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Duke v. Cleland,* 5 F.3d 1399, 1402 (11th Cir. 1993). A plaintiff need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).

## III. ANALYSIS

Defendants Newton County Sheriff's Office, Sheriff Ezell Brown (in his official capacity), and Officers Shirley and Ramsey (in their individual and official capacities) assert that they are entitled to judgment as a matter of law based on the pleadings in this case.

Defendants seek dismissal of Mr. Brown's § 1983 claims against Officers Shirley and Ramsey (in their individual capacities) by asserting that they cannot be liable under § 1983 because the Complaint fails to plead that a Fourth Amendment violation occurred. They further assert that, even if such a violation occurred, the two officers are entitled to qualified immunity. Separately, Officer Ramsey asserts that he could not have violated Ms. Brown's Fourth Amendment rights because he did not shoot one of the bullets that struck her. He points to the specific forensic evidence attached to the Complaint, which shows both shell casings belonged to Officer Shirley's gun.

Defendants also seek dismissal of Mr. Brown's wrongful death claims against Officers Shirley and Ramsey (in their individual capacities) under Georgia law. Defendants contend that the two officers are entitled to official immunity based on the Complaint's failure to show that they acted with "actual malice" or "actual intent to cause injury." [4]

---

4. Defendants' Motion for Judgment on the Pleadings also argues that the wrongful death claim against Sheriff Brown should be dis-

missed (Doc. 28 at 25), but the Complaint does not assert a wrongful death claim

Similarly, Defendants seek dismissal of Mr. Brown's § 1983 claims against Sheriff Brown and Officers Shirley and Ramsey (in their official capacities). They argue that these § 1983 claims fail because, in their official capacities, Sheriff Brown and Officers Shirley and Ramsey are not "persons" who can be sued under § 1983 and because they are entitled to Eleventh Amendment immunity.

Finally, Defendants seek dismissal of the § 1983 claim against the Newton County Sheriff's Office. Defendants argue that Georgia law has not recognized a sheriff's department as a legal entity that can be sued.

### A. § 1983 Claims Against Officers Shirley and Ramsey Individually

Mr. Brown's Complaint alleges that Officers Shirley and Ramsey used "unreasonable and excessive deadly force" when they shot Ms. Brown, resulting in an unconstitutional seizure in violation of the Fourth Amendment. This Fourth Amendment violation is the basis for Mr. Brown's § 1983 claim against Officers Shirley and Ramsey.

#### 1. Fourth Amendment Violation

■ The Fourth Amendment provides the right to be free from unreasonable searches and seizures by the government. Under the Fourth Amendment, a seizure occurs when an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Roberts v. Spielman*, 643 F.3d 899, 905 (11th Cir. 2011) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Thus, the Fourth Amendment's freedom from unreasonable seizures encompasses the right to be free from the use of excessive force in the

course of an arrest, or other "seizure." *See Graham v. Connor*, 490 U.S. 386, 394–95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ("[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.") (emphasis omitted); *Mercado v. City of Orlando*, 407 F.3d 1152, 1156–57 (11th Cir. 2005) (analyzing the police killing of a suicidal victim as a "seizure" under the Fourth Amendment).

■ A claim of excessive force is analyzed through the lens of the Fourth Amendment's "objective reasonableness" standard. *Graham*, 490 U.S. at 395–96, 109 S.Ct. 1865 (citing *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)); *McCullough v. Antolini*, 559 F.3d 1201, 1205–06 (11th Cir. 2009); *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009). To determine whether an officer's use of force was reasonable, the Court must assess "whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). Reasonableness of force is judged from the perspective of a reasonable officer on the scene, not with the "20/20 vision of hindsight." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. The Supreme Court has cautioned that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force

against Sheriff Brown. The Complaint only asserts a wrongful death claim against Officers Shirley and Ramsey individually. Defendants appear to recognize this in their Reply, which only addresses the wrongful death

claim as to Officers Shirley and Ramsey. Thus, the Court need not consider Sheriff Brown when assessing the wrongful death claims.

that is necessary in a particular situation." *Id.* at 396–97, 109 S.Ct. 1865.

■ Moreover, the determination of whether the particular use of force is reasonable under the Fourth Amendment "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396, 109 S.Ct. 1865 (quoting *Garner*, 471 U.S. at 9, 105 S.Ct. 1694); *see also Fils v. City of Aventura*, 647 F.3d 1272, 1288 (11th Cir. 2011). "When determining the government's interest, we must consider factors that include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Mercado*, 407 F.3d at 1157 (11th Cir. 2005) (internal citations omitted).

■ Naturally, "[u]sing deadly force in a situation that clearly would not justify its use is unreasonable under the Fourth Amendment." *Id.* at 1160. The Eleventh Circuit has distilled three key factors concerning the reasonableness of the use of deadly force. *Perez v. Suszczynski*, 809 F.3d 1213, 1218 (11th Cir. 2016). An officer is justified in using deadly force when the officer:

> (1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others or that he has committed a crime involving the infliction or threatened infliction of serious physical harm; (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible.

*Id.* (quoting *Morton v. Kirkwood*, 707 F.3d 1276, 1282 (11th Cir. 2013)) (internal quotation marks omitted). Although this list of factors may be relevant in assessing the

reasonableness of using deadly force, the Eleventh Circuit has cautioned that "[t]he constitutional test for excessive force is necessarily fact specific." *McCullough*, 559 F.3d at 1206. Courts must "slosh [their] way through the factbound morass of 'reasonableness.'" *Long v. Slaton*, 508 F.3d 576, 580 (11th Cir. 2007) (quoting *Scott v. Harris*, 550 U.S. 372, 383, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)).

■ In this case, Mr. Brown alleges the following set of facts: Officers Ramsey and Shirley knew Ms. Brown was suicidal from the start of the 911 call. (Compl. ¶¶ 15, 19–21.) Officers Gordon and Ramsey arrived at her property first and saw her come outside with a rifle, and they backed up their vehicle just as Officer Shirley arrived in his vehicle. (*Id.* ¶¶ 22–24.) Officers Ramsey and Shirley went straight to the trunks of their vehicles to retrieve assault rifles. (*Id.* ¶¶ 26–30.) They got into "safe" and "protected positions" behind Officer Gordon's vehicle, located approximately 120 feet or more from Ms. Brown, and they aimed their rifles at her. (*Id.* ¶¶ 26, 32, 37.) Right before they shot her, Ms. Brown—a 74–year-old woman—was simply standing in her driveway holding a rifle, having difficulty handling it, and stating that she wanted to die. (*Id.* ¶¶ 16, 41–42.) She did not say anything threatening to the officers. (*Id.* ¶¶ 41–42.) There are also no allegations that she shot her gun. (*See* Compl., generally.) Officers Ramsey and Shirley then shot her "as a first resort" and "without first attempting either persuasion or the use of nondeadly means to subdue or pacify her." (*Id.* ¶ 41.) They shot her within just two minutes of arriving at her property. (*Id.*)

Based on these allegations, it is plausible that Officers Shirley and Ramsey lacked probable cause to believe Ms. Brown posed a serious threat of physical harm to the officers. It is also plausible that they failed

to give Ms. Brown some warning about the possible use of deadly force, even though such a warning was feasible under the circumstances. These alleged facts, if developed through discovery, could support a finding that Officers Shirley and Ramsey used excessive force in violation of Ms. Brown's Fourth Amendment rights. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1157–58 (11th Cir. 2005) (finding it was unreasonable for an officer to shoot the plaintiff, who was pointing a knife at his own chest, since he "was not committing a crime, resisting arrest, or posing an immediate threat to the officers at the time he was shot"); *see also Salvato v. Miley*, 790 F.3d 1286, 1290 (11th Cir. 2015) (finding it was unreasonable for an officer to shoot the plaintiff even though the plaintiff had exchanged blows with the officer and then retreated unarmed); *Knight v. Finley*, No. 1:09-CV-1790-AT, 2012 WL 12895851, at *11 (N.D. Ga. May 14, 2012) (finding it was unreasonable for an officer to shoot the disabled plaintiff who simply had access to a knife, had committed simple battery against his wife, was agitated, and spoke aggressively to the officers, but had not threatened the officers or anyone else before he was shot) (affirmed in part and reversed in part on other grounds by *Knight v. Forsyth County, Ga.*, 523 Fed. Appx. 599 (11th Cir. 2013)).

Defendants argue that Mr. Brown makes several general allegations about the shooting that are contradicted by the specific facts in the exhibits attached to the Complaint. Defendants assert that the exhibits—particularly the officers' statements about the shooting—govern over Mr. Brown's allegations. Officers Gordon, Shirley, and Ramsey provided statements as part of the GBI investigation and the Newton County Sheriff's Office incident report, and Mr. Brown attached these statements to the Complaint. According to the officers' statements, two things happened right before Ms. Brown was shot:

(1) Officer Gordon shouted multiple commands for her to drop her gun, and (2) she did not comply but instead pointed the barrel of her rifle at the officers. Defendants rely on these facts to argue that Officers Shirley and Ramsey acted reasonably by shooting Ms. Brown because they had probable cause to believe she was a serious threat to them.

While Defendants are correct about the principle that exhibits govern when they contradict the general and conclusory allegations of the pleading, *see Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007), Defendants misapply this principle here. The reason is that Mr. Brown's allegations in his Complaint dispute critical aspects of the officers' accounts of the shooting. In *Saunders v. Duke*, the Eleventh Circuit reviewed a nearly identical issue on a motion to dismiss, where the plaintiff had attached police reports to his complaint alleging excessive force. The Eleventh Circuit made clear that these police reports were not controlling on a motion to dismiss, despite the defendants' arguments to the contrary, because the plaintiff had alleged in his complaint that the reports failed to properly document the incident at issue. The court reasoned as follows:

> Where a civil rights plaintiff attaches a police report to his complaint and alleges that it is false, as [Plaintiff] did, the contents of the report cannot be considered as true for purposes of ruling on a motion to dismiss. Otherwise, officers sued under § 1983 could just attach police reports referenced in a civil rights complaint to their motions to dismiss and ask courts to consider the contents of those reports even if they contradicted the allegations of the complaint. And that, as we have said, would be improper.

766 F.3d 1262, 1270 (11th Cir. 2014); *see also Smith, et al. v. DeKalb County, et al.,* No. 1:12-CV-0740-AT, 2012 WL 12948861 (N.D. Ga. Dec. 19, 2012) (Doc. 31) (on a motion to dismiss, refusing to construe the complaint's reference to a grand jury proceeding—stating that the decedent had made a "threatening move" towards the police before he was shot—as an allegation that the decedent threatened the police because the complaint must be construed in the plaintiffs' favor and supported an inference that the decedent did *not* make a threatening move); *see also Smith v. LePage,* 834 F.3d 1285, 1296–97 (11th Cir. 2016) (affirming district court's subsequent denial of summary judgment to defendants, and finding a dispute in the evidence regarding whether decedent threatened officers before being shot to death despite officers' statements that decedent threatened them).

Like the plaintiff in *Saunders,* Mr. Brown alleges that Officers Gordon, Shirley, and Ramsey's statements about the incident do not accurately document the shooting incident. Specifically, he disputes their statements that Officer Gordon shouted multiple commands to Ms. Brown to drop her gun and she refused to comply. (*See* Compl. ¶¶ 41–42.) He also disputes that she pointed the barrel of her gun at them right before they shot her. (*See id.*) Mr. Brown instead alleges Officers Shirley and Ramsey shot Ms. Brown after she merely repeated her wish to die and had difficulty handling her rifle. (*Id.*) Mr. Brown alleges that they shot her "without first attempting either persuasion or the use of nondeadly means to subdue or pacify her." (*Id.*)

Moreover, Mr. Brown's Complaint directly challenges the credibility of the officers' accounts of the shooting. He alleges that the short amount of time between the officers' arrival and the shooting—just two minutes—was not enough time for the officers to feel that they were in imminent danger, particularly from their protected positions behind a police vehicle over 120 feet away. (*See id.* ¶ 41.) Nor was it enough time to justify their use of deadly force against Ms. Brown as opposed to other nondeadly means of subduing her. (*See id.*) Mr. Brown also alleges that the inconsistencies between the officers' statements about what happened and the actual evidence obtained during the GBI investigation shows that the officers' statements are not credible. (*See id.* ¶¶ 35–40.) Indeed, he alleges that they lied and tampered with evidence to cover up what really happened. (*Id.* ¶ 40.) Thus, at this stage of the proceedings and in accordance with *Saunders,* the Court does not consider Officers Gordon, Shirley, or Ramsey's statements as controlling when evaluating this motion.

Defendants also attempt to analogize this case to two Eleventh Circuit cases that found no Fourth Amendment violation. In *Long v. Staton,* a mentally unstable young man resisted arrest and got into the police officer's patrol car, which was running at the time, and closed the door. 508 F.3d 576, 578–79 (11th Cir. 2007). The officer pointed his gun at the man, ordered him to get out, and threatened to shoot if he did not comply. *Id.* at 579. The man shifted the car into reverse and started to back away towards the road, and the officer shot and killed him. *Id.* On a motion to dismiss, the Eleventh Circuit found that the officer acted objectively reasonably and was entitled to qualified immunity because the man's "energetic evasion of the deputy's physical control, [his] criminal act of stealing a police cruiser, and [his] starting to drive—even after being warned of deadly force—to a public road gave the deputy reason to believe that [the man] was dangerous." *Id.* at 581–82. In *Garczynski v. Bradshaw,* a man was suicidal and holding a gun to his head when police officers broke into his car to stop him. 573 F.3d 1158, 1163–64 (11th Cir. 2009). The

officers ordered him to drop his gun, and the man then moved the gun from his head to point it at the officers. *Id.* One of the officers shot and killed the man. *Id.* at 1164. On a motion for summary judgment, the Eleventh Circuit held that the officer was entitled to qualified immunity because he acted reasonably under the circumstances, given that the man "refus[ed] to comply with the officers' commands" and "swung the gun from his head in the direction of the officers, at which point they fired." *Id.* at 1168.

The case at bar is distinguishable from both of these cases in important ways. As stated above, Mr. Brown's allegations contradict the police officers' statements that they issued warnings to Ms. Brown before they shot her. (Compl. ¶¶ 41–42.) The allegations contradict the officers' version that Ms. Brown pointed her rifle at the officers before they shot her. (*Id.*) Thus, under the facts alleged by Mr. Brown, Officers Shirley and Ramsey shot his wife without warning or justification when they were situated about 120 feet away and shielded by a police car. (*Id.*) In contrast, both *Long* and *Garczynski* involved officers who gave verbal commands to the victims who were in immediate proximity, the victims did not comply, and the victims acted in a way to threaten the officers or others before they were shot. These are critical distinctions from the allegations in the present case, and therefore *Long* and *Garczynski* do not govern this Fourth Amendment analysis, putting aside that *Garczynski* was decided at summary judgment.

Defendants' other argument is that Officer Ramsey could not have violated Ms. Brown's Fourth Amendment rights because the forensics report attached to the Complaint shows he did not shoot her. According to Defendants, this report contradicts any general allegations in the Complaint and is therefore dispositive as to his liability. Specifically, Defendants contend that the forensics report shows that "both bullets that struck Ms. Brown were fired by Sergeant Shirley." (Defs.' Motion, Doc. 28–1 at 12.) The Complaint, however, relies on certain inconsistencies and contradictions within the GBI investigation and the Newton County Sheriff's Office's incident report as detailed above. In particular, the Complaint references inconsistencies between the forensics report and the officers' statements that both Officers Shirley and Ramsey shot Ms. Brown. Construing the allegations in Mr. Brown's favor, it is plausible that either (1) the forensics report accurately reveals that only Officer Shirley shot both bullets at Ms. Brown or (2) the officers' statements and the location of the shell casings at the crime scene accurately reflect that both Officers Shirley and Ramsey shot Ms. Brown. The Court cannot resolve this factual dispute, on this record, on a motion for judgment on the pleadings.

This case is not before the Court on a motion for summary judgment. At summary judgment, evidence may be presented that would not allow a jury to reasonably find that either Officer Shirley or Officer Ramsey violated Ms. Brown's Fourth Amendment rights. But that evidence is not before the Court now. Defendants cannot satisfy their burden on a motion for judgment on the pleadings by stretching and sometimes distorting the actual allegations of Mr. Brown's Complaint. The Court must accept the allegations of the Complaint as true and construe them in the light most favorable to Mr. Brown. Under this standard, the Complaint has alleged a set of facts that could plausibly show Officers Shirley and Ramsey used excessive force against Ms. Brown in violation of her Fourth Amendment rights. The Court now turns to Defendants' qualified immunity defense.

## 2. Qualified Immunity Defense

Defendants argue that Officers Shirley and Ramsey are entitled to qualified immunity and therefore cannot be liable for shooting Ms. Brown.

Qualified immunity offers complete protection for government officials sued in their individual capacities, allowing them to carry out their discretionary duties without fear of personal liability or harassing litigation. *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). Officials are generally shielded from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Vinyard*, 311 F.3d at 1346. Qualified immunity protects from suit all but the plainly incompetent or those who knowingly violate the law. *Vinyard*, 311 F.3d at 1346 (citing *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)); *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) (citing *Malley v. Briggs*, 475 U.S. 335, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

Qualified immunity is an affirmative defense pled by the defendant official. *Harlow v. Fitzgerald*, 457 U.S 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Initially, the defendant official must prove that he was acting within the scope of his employment when the allegedly wrongful acts occurred. *Vinyard*, 311 F.3d at 1346. In this case, Mr. Brown does not appear to contest that Officers Shirley and Ramsey were acting within the scope of their employment. Furthermore, the Eleventh Circuit has stated that officers "trying to apprehend a potentially suicidal subject [are] clearly engaged in a discretionary capacity"—which was exactly the activity that Officers Shirley and Ramsey were engaged in with Ms. Brown. *Mercado*, 407 F.3d at 1156.

The burden then shifts to the plaintiff to show qualified immunity is inappropriate. *Vinyard*, 311 F.3d at 1346. To assess whether the officer is entitled to qualified immunity, the threshold inquiry is whether the plaintiff's allegations, if true, establish a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Vinyard*, 311 F.3d at 1346. As stated above, the Court has already found that the Complaint sufficiently alleges a factual basis to support the § 1983 claims against Officers Shirley and Ramsey based on Fourth Amendment violations.

The next inquiry is whether the alleged violated right was clearly established under the law at the time of the incident, such that a reasonable officer would have known that his conduct was unlawful. *Vinyard*, 311 F.3d at 1346. There are three ways to show that a right was clearly established: (1) a "materially similar" case has already been decided; (2) a broad statement of principle within the Constitution, statute, or case law clearly establishes the right; or (3) the conduct at issue "so obviously violates the constitution that prior case law is unnecessary." *Mercado*, 407 F.3d at 1158–59.

Here, construing the Complaint's allegations in the light most favorable to Mr. Brown, the Court finds that there is "materially similar" case law within the Eleventh Circuit so that Officers Shirley and Ramsey had "fair warning of [their] unlawful conduct." *Willingham v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003). While "officials must have fair warning that their acts are unconstitutional, there need not be a case on all fours[ ] with materially identical facts, ... so long as the prior decisions gave reasonable warning that the conduct at issue violated con-

stitutional rights." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1277 (11th Cir. 2004) (internal quotation marks and citation omitted).

The Eleventh Circuit's decision in *Mercado v. City of Orlando* clearly established that officers cannot use deadly force against a suicidal person who may be armed but who does not pose an immediate threat to the officers. 407 F.3d at 1160. In *Mercado*, police responded to a suicide call by going inside Ramon Mercado's home, where they found him sitting on the kitchen floor, crying and holding a knife towards his heart, and with a phone cord wrapped around his neck. *Id.* at 1154. The police ordered Mr. Mercado to drop the knife, and he refused but made no threatening moves towards the officers. *Id.* One of the officers then shot him with "less lethal" munition that ended up fracturing his skull. *Id.* at 1155. The Eleventh Circuit found that the officer who shot Mr. Mercado used excessive force in violation of the Fourth Amendment, because the officer shot Mr. Mercado when "he was not committing a crime, resisting arrest, or posing an immediate threat to the officers." *Id.* at 1157–58. Moreover, the Eleventh Circuit held that the officer was not entitled to qualified immunity. *Id.* at 1161. The Eleventh Circuit cited to Supreme Court case law as setting forth "the clearly established principle that deadly force cannot be used in non-deadly situations." *Id.* at 1160. Based on the facts presented at summary judgment, the Eleventh Circuit found that the officer violated this clearly established principle because the situation involving Mr. Mercado "was clearly not a deadly force situation." *Id.*; *see also Calderin v. Miami–Dade Police Dep't*, 600 Fed.Appx. 691, 696 (11th Cir. 2015) (citing to *Mercado* as clearly establishing the plaintiff's right to be free from unreasonable seizure, where an officer shot the suicidal plaintiff after he brought a knife close to his neck and did not make any threatening movements towards the police).

It is also well-established under Eleventh Circuit case law that a victim's possession of or access to a weapon does not automatically entitle police officers to qualified immunity for their use of lethal force. Rather, the Court must consider all of the circumstances to determine if lethal force was reasonable at the time. *See, e.g., Lundgren v. McDaniel*, 814 F.2d 600, 603 (11th Cir. 1987) (holding that officers were not entitled to qualified immunity where it was disputed whether the victim threatened the officers with a gun, since "[t]he jury could have reasonably believed that the officers were neither threatened by a weapon, nor appeared to be threatened by a weapon, nor were fired upon, but rather that the officers without provocation shot at a nondangerous suspect"); *Perez v. Suszczynski*, 809 F.3d 1213, 1220–22 (11th Cir. 2016) (holding that the officer was not entitled to qualified immunity where he shot the victim who had a gun in his waistband, since the presence of a gun "is merely one element in the [reasonableness] calculus; the ultimate determination depends on the risk presented, evaluating the totality of the circumstances surrounding the weapon.... Our case law clearly establishes that the use of force against an arrestee who, inter alia, is not a threat, has not exhibited aggressive behavior, and has not actively resisted arrest is excessive.").

In light of this case law, Mr. Brown has alleged facts that could plausibly support a finding that Officers Shirley and Ramsey are not entitled to qualified immunity. Specifically, it is clearly established that "deadly force cannot be used in non-deadly situations." *Mercado*, 407 F.3d at 1160. And Mr. Brown has alleged sufficient facts to show that the confrontation with Ms. Brown may have been a non-deadly situation. The Complaint describes Ms. Brown

simply holding a rifle, repeating her wish to die, and standing out in the open approximately 120 feet from Officers Shirley and Ramsey, who were both in protected positions behind a patrol vehicle, at the time they shot her. (Compl., Doc. 1–1 ¶¶ 41.) They knew she was suicidal when they arrived on the scene. (*Id.* ¶ 15.) They shot her without any warning, without trying any other means of subduing her, and in less than two minutes after arriving at her property. (*Id.* ¶ 41.) Moreover, there are no Complaint allegations admitting or suggesting that Ms. Brown threatened the officers, shot her gun, attempted to flee, or refused to comply with any orders. (*See id.*, generally.)

For these reasons, the Court **DENIES** Defendants' Motion with respect to the § 1983 claims against Officers Shirley and Ramsey in their individual capacities.

### B. Georgia Wrongful Death Claims Against Officers Shirley and Ramsey Individually

Mr. Brown also brought state-law wrongful death claims against Officers Shirley and Ramsey individually, and Defendants assert that they are entitled to official immunity from these claims under Georgia law. Defendants contend that Mr. Brown did not sufficiently plead that the two officers acted with actual malice, so official immunity applies here.

The Georgia Constitution provides that state officers and employees "may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions." GA. CONST., art. I, § 2, ¶ IX(d). When determining whether a public agent is entitled to official immunity for discretionary acts, a court must evaluate the agent's subjective intent. *Jordan v. Mosley*, 487 F.3d 1350 (11th Cir. 2007) ("Unlike qualified immunity under federal law, we must inquire into

[the public agent's] subjective intent to determine whether he has official immunity under Georgia law."). Specifically, a public agent loses the protection of official immunity if the agent acted with "actual malice or intent to injure." *Cameron v. Lang*, 274 Ga. 122, 549 S.E.2d 341, 345 (2001). "Actual malice" refers to "a deliberate intention to do wrong," which is more than simply "reckless disregard for the rights or safety of others." *Murphy v. Bajjani*, 282 Ga. 197, 647 S.E.2d 54, 60 (2007) (quoting *Merrow v. Hawkins*, 266 Ga. 390, 467 S.E.2d 336 (1996)). The agent's deliberate intention "must be the intent to cause the harm suffered by the plaintiffs." *Marshall v. Browning*, 310 Ga. App. 64, 712 S.E.2d 71, 74 (2011). Like actual malice, the term "intent to cause injury" means the "actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." *Id.* at 74.

According to Defendants, Officers Shirley and Ramsey did not act with actual malice because they were justified in shooting Ms. Brown pursuant to Georgia law. O.C.G.A. § 17–4–20(b) states:

> Sheriffs and [their deputies] may use deadly force to apprehend a suspected felon only when the officer reasonably believes that the suspect possesses a deadly weapon or any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury; when the officer reasonably believes that the suspect poses an immediate threat of physical violence to the officer or others; or when there is probable cause to believe that the suspect has committed a crime involving the infliction or threatened infliction of serious physical harm.

Defendants assert that Ms. Brown was a suspected felon because she pointed her gun at the three officers, which constituted

three aggravated assaults. Thus, Defendants state that Officers Shirley and Ramsey were justified in shooting Ms. Brown under any of the three conditions in O.C.G.A. § 17–4–20(b): she possessed a deadly weapon, they reasonably believed she posed an immediate threat to them since she pointed her gun at them, and they had probable cause to believe she was actively committing a crime involving serious physical harm for the same reason.

Once again, Defendants' view of the allegations is notably different from what is actually pled in the Complaint. The Complaint does not allege that Ms. Brown raised her gun toward the officers before they shot her. It only alleges that she was holding her gun and having trouble handling it while standing in front of her carport, with an express desire to end her own life. (Compl. ¶¶ 41–42.) The Court must accept Mr. Brown's allegations as true at this time. Accordingly, the allegations alone do not show that Ms. Brown committed aggravated assaults against the officers, so they also do not show she was a suspected felon. Officers Shirley and Ramsey cannot rely on O.C.G.A. § 17–4–20(b) to justify their actions based solely on the Complaint's allegations. And as is often the case when analyzing official immunity under Georgia law, the same alleged facts that prevent dismissal of the § 1983 claims against Officers Shirley and Ramsey also prevent dismissal of the state-law claims against them. See, e.g., Smith, 834 F.3d at 1298. Here, the Complaint provides a plausible factual basis which Mr. Brown may develop through litigation to show that Officers Shirley and Ramsey may have acted with "actual intent to cause harm to [Ms. Brown]." Marshall, 712 S.E.2d at 74.

For these reasons, the Court cannot conclude on a motion for judgment on the pleadings that Officers Shirley and Ramsey did not act with the intent to injure Ms. Brown. The Court **DENIES** Defendants' Motion with respect to the wrongful death claims against Officers Shirley and Ramsey individually.

### C. § 1983 Claims Against Sheriff Brown and Officers Shirley and Ramsey in Their Official Capacities and Against the Newton County Sheriff's Office

Mr. Brown brought a § 1983 claim against Sheriff Brown in his official capacity for "failing to conduct training of Officers Shirley and Ramsey that was obviously needed to anticipate the regularly occurring circumstances of a mentally or emotionally disturbed or suicidal 911 caller or suspect." (Compl. ¶ 56.) Defendants move for dismissal of the claim against Sheriff Brown in his official capacity because he was acting as an arm of the State of Georgia, and the State is immune from suit under the Eleventh Amendment.

The Eleventh Circuit in *Manders v. Lee* stated that "[w]hether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." 338 F.3d 1304, 1309 (11th Cir. 2003). *Manders* set forth four factors for courts to consider in determining whether an entity is an arm of the state in carrying out a particular function: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* In *Manders*, the plaintiff claimed that the sheriff was liable under § 1983 for promulgating an excessive force policy in the jails and for training his deputies accordingly. *Id.* at 1307. Upon weighing the four factors, the court determined that the sheriff acted as an arm of the state when performing this function and was therefore entitled to Eleventh Amendment immunity. *Id.* at

1328. The court arrived at this conclusion largely because: Georgia law establishes that the sheriff is an employee of the state; the sheriff's "use of force and creating force policy are quintessential policing functions" derived from the state and not the county; the state exercises the power to discipline a sheriff "if [he] permits excessive force"; and "only the State possesses control over sheriffs' force policy and that control is direct and significant in many areas, including training and discipline." *Id.* at 1319–1322.

Here, Mr. Brown challenges Sheriff Brown's deadly force policy in law enforcement, specifically when dealing with mentally unstable or suicidal persons, and the training of his deputies on such use of force. Mr. Brown's claim is nearly identical to the claim in *Manders*, with the main difference being that the plaintiff in *Manders* challenged a force policy within county jails. The Eleventh Circuit's reasoning in *Manders* applies to the challenged policy in this case. Mr. Brown simply challenges the use of deadly force in the broader law enforcement context handled by the Newton County Sheriff's Office— the "quintessential policing functions" that *Manders* described as being directly derived from the State. *Id.* at 1319; *see also Jude v. Morrison*, 534 F.Supp.2d 1365, 1368 (N.D. Ga. 2008) ("The [*Manders*] court [ ] strongly suggested that when sheriffs perform other law enforcement duties they are also acting as an arm of the state."); *Townsend v. Coffee County, Ga.*, 854 F.Supp.2d 1345, 1352 (S.D. Ga. 2011) ("Although the present case involves law-enforcement functions of a sheriff's office (investigatory stop and arrest), rather than jail functions, the *Manders* factors inform the Court's analysis in reaching the same conclusion as the Eleventh Circuit did in *Manders*."). Thus, based on the *Manders* factors, the Court concludes that Sheriff Brown acts as an arm of the State for purposes of establishing deadly force

policies and training his deputies accordingly. As an arm of the State, Sheriff Brown is entitled to sovereign immunity under the Eleventh Amendment. *See id.* at 1328. The Court hereby **GRANTS** Defendants' motion with respect to the § 1983 claim against Sheriff Brown in his official capacity.

 Mr. Brown also brought § 1983 claims against Officers Shirley and Ramsey in their official capacities, presumably for their acts of shooting Ms. Brown since the Complaint does not specify. The Court's holding with respect to Sheriff Brown extends to Officers Shirley and Ramsey as well. "[T]he courts in this circuit have determined that when a sheriff is acting as an arm of the state, his deputies are also entitled to Eleventh Amendment immunity from suits for money damages in their official capacities." *Morgan v. Fulton Cty. Sheriff's Dep't*, No. CIVA 1:05CV1576 JOF, 2007 WL 1810217, at *5 (N.D. Ga. June 21, 2007) (citing to *Gates v. Jolley*, 2007 WL 106533, *3 (M.D. Ga. Jan. 8, 2007); *Slater v. Henderson*, 2006 WL 1517068, *1 (M.D. Ga. May 24, 2006); *Bunyon v. Burke County*, 306 F.Supp.2d 1240, 1255 (S.D. Ga. 2004); *Mladek v. Day*, 293 F.Supp.2d 1297, 1304 (M.D. Ga. 2003)). Even if this Court had not found Sheriff Brown to be entitled to Eleventh Amendment immunity, Officers Shirley and Ramsey would still be entitled to Eleventh Amendment immunity in their own official capacities. *See McDaniel v. Yearwood*, No. 2:11-CV-00165-RWS, 2012 WL 526078, at *7 (N.D. Ga. Feb. 16, 2012) ("The Court concludes that the deputies were acting as state actors when they arrested Plaintiff .... As the Eleventh Circuit emphasized in *Grech*, counties have no control over the law enforcement functions of sheriffs and their deputies, who, on the contrary, derive their law enforcement authority solely from the State."); *see also Townsend*, 854

F.Supp.2d at 1352 (finding a deputy was entitled to Eleventh Amendment immunity for his law enforcement function in stopping and arresting the plaintiff); *Mladek v. Day*, 293 F.Supp.2d 1297, 1304 (M.D. Ga. 2003) ("[B]ased upon the rationale of *Manders*, [Deputy] Day was wearing a 'state hat' at the time of Mr. Mladek's arrest and subsequent detention."). Thus, the Court **GRANTS** Defendants' motion with respect to the § 1983 claims against Officers Shirley and Ramsey in their official capacities.

### D. § 1983 Claim Against Newton County Sheriff's Office

 Mr. Brown brought a § 1983 claim against the Newton County Sheriff's Office for the same reason he brought a § 1983 claim against the Sheriff—for "failing to conduct training of Defendants Shirley and Ramsey that was obviously needed to anticipate the regularly occurring circumstances of a mentally or emotionally disturbed or suicidal 911 caller or suspect." (Compl. ¶ 56.) Defendants move for dismissal of this claim because a sheriff's office is not a legal entity capable of being sued under Georgia law.

Defendants are correct. The Eleventh Circuit has examined Georgia law and concluded that sheriffs' departments are not considered legal entities subject to suit. *See Lovelace v. Dekalb Cent. Prob.*, 144 Fed.Appx. 793, 795 (11th Cir. 2005) (affirming district court's decision to dismiss § 1983 claim against sheriff's department because it cannot be sued under Georgia law); *see also Lawal v. Fowler*, 196 Fed. Appx. 765, 768 (11th Cir. 2006) (same). Accordingly, the Court **GRANTS** Defendants' motion with respect to the Newton County Sheriff's Office.

### IV. CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Judgment on the Pleadings [Doc. 28]. Mr.

Brown's § 1983 claims and state-law wrongful death claims against Officers Shirley and Ramsey in their individual capacities are **NOT DISMISSED.** Mr. Brown's § 1983 claims against Sheriff Brown in his official capacity, the Newton County Sheriff's Office, and Officers Shirley and Ramsey in their official capacities are **DISMISSED.**

**IT IS SO ORDERED** this 7th day of August, 2017.

